**Ryan K. YORK, Respondent,**

v.

**DIRECTOR OF REVENUE, State of Missouri, Appellant.**

**No. SC 87159.**

Supreme Court of Missouri, En Banc.

March 21, 2006.

---

4. Section 556.041.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl Caponegro Nield, Deputy Solicitor, Jefferson City, for appellant.

Carl M. Ward, Washington, for respondent.

RONNIE L. WHITE, Judge.

## I.

The Director of Revenue (Director) revoked Ryan K. York's driver's license based upon a probable cause determination that he was driving while intoxicated. The circuit court reinstated York's driving privileges concluding that the facts were insufficient to support probable cause. The judgment is affirmed.

## II.

The evidence, in the light most favorable to the judgment, indicates that a Missouri State Highway Patrol Trooper arrested York at a sobriety checkpoint on Missouri Highway 19. York was not driving erratically, he had not committed any traffic violations, he made no attempt to avoid the checkpoint and he produced his license and insurance card with no difficulty. The trooper spent a total of only three minutes with York prior to placing him under arrest.

The trooper claimed that she detected a strong odor of alcohol around York and noticed that his eyes were watery, bloodshot, and glassy. According to the trooper's testimony, these observations alone were insufficient to establish intoxication so she performed three field sobriety tests and a portable breath test (PBT) to help develop probable cause for a possible arrest.[1] She would later testify that York had problems with his balance, with walking and turning, and with his speech, but at trial was unable to recall if these observations were made in association with the field sobriety tests prior to the arrest, as is required to establish probable cause. She also admitted at trial that she improperly administered all of these tests and that her failure to do so seriously compromised their validity.

The circuit court found that the trooper's testimony regarding her probable cause determination was not credible and excluded the evidence of the improperly performed tests. The court also determined that the only uncontroverted indicia of intoxication, including the odor of intoxicants and York's eyes being watery, bloodshot and glassy, and York's admission to drinking one or two beers were insufficient to support probable cause to arrest and ordered the Director to reinstate York's driving privileges.

## III.

"This Court will affirm the trial court's judgment unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the trial court erroneously declares or applies the law."[2] This Court also defers to the trial court's determination of credibility of the witness testimony.[3]

"Section 302.505.1 permits the department of revenue to suspend or revoke the driver's license of any person arrested upon probable cause of driving while intoxicated."[4] "An aggrieved driver can seek a trial de novo."[5] "At the trial the court must determine whether the suspension or revocation is supported by evidence that: (1) the driver was arrested

---

1. The field sobriety tests included the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, and a one-leg stand test.

2. *Walker v. Director of Revenue*, 137 S.W.3d 444, 446 (Mo. banc 2004); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

3. *Verdoorn v. Director of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003).

4. *Id.*

5. *Id.*

upon probable cause for violating an alcohol-related offense; and (2) the driver's blood alcohol concentration exceeded the legal limit." [6] "The burden of proof is on the director of revenue to establish grounds for the suspension or revocation by a preponderance of the evidence." [7]

■■■ "The probable cause required for the suspension or revocation of a driver's license is the level of probable cause necessary to arrest a driver for an alcohol-related violation." [8] "That level of probable cause will exist when a police officer observes an unusual or illegal operation of a motor vehicle and observes indicia of intoxication upon coming into contact with the motorist." [9] "Probable cause, for the purposes of section 302.505, will exist when the surrounding facts and circumstances demonstrate to the senses of a reasonably prudent person that a particular offense has been or is being committed." [10] "The level of proof necessary to show probable cause under section 302.505 is substantially less than that required to establish guilt beyond a reasonable doubt." [11] "The trial court must assess the facts by viewing the situation as it would have appeared. to a prudent, cautious, and trained police officer." [12] "Whether there is probable cause to arrest depends on the information in the officers' possession prior to the arrest." [13]

**IV.**

■■■ The Director argues that the trial court erred when excluding the results of the PBT because section 577.021 does not require any foundation for the admission of these tests. [14] The Director further contends that the results of the PBT, when coupled with the remaining observations of the trooper, was sufficient evidence to support probable cause for York's arrest and suspension of his driving privileges.

The relevant trial testimony from the trooper concerning her determination of probable cause for York's arrest is summed up as follows:

**Field Sobriety Tests:**

Question: All right. And in fact, you compromised the validity of all of the tests that you administered in this particular case, because you didn't follow the proper operating guidelines and procedures and give all the instructions your were required to; isn't that true?

Answer: According to my prior testimony, yes, sir.

**Portable Breath Test:**

Question: And you indicated you administered a portable breath test, a preliminary breath test?

6. *Id.;* Section 302.535.1.

7. *Id.*

8. *Brown v. Director of Revenue*, 85 S.W.3d 1, 3 (Mo. banc 2002).

9. *Id.*

10. *Id.*

11. *Id.*

12. *Id.*

13. *Hinnah v. Director of Revenue,* 77 S.W.3d 616, 620 (Mo. banc 2002).

14. Section 577.021 provides: "Any state, county or municipal law enforcement officer who has the power of arrest for violations of section 577.010 or 577.012 and who is certified pursuant to chapter 590, RSMo, may, prior to arrest, administer a chemical test to any person suspected of operating a motor vehicle in violation of section 577.010 or 577.012. A test administered pursuant to this section shall be admissible as evidence of probable cause to arrest and as exculpatory evidence, but shall not be admissible as evidence of blood alcohol content. The provisions of section 577.020 shall not apply to a test administered prior to arrest pursuant to this section."

Answer: Yes, sir, I did.

Question: And what did that indicate?

Mr. Ward: Judge, at this point, I've got a number of objections, but I think it would be appropriate if I would voir dire the witness concerning that test.

The Court: Any objection to that?

Mr. Chenault: Go ahead.

The Court: You may proceed.

Further Voir Dire Examination by Mr. Ward:

Question: Trooper, prior to administering this test on Mr. York, true or false, you did not have any specific training or special training or formal training in how to operate this unit?

Answer: Are you referring to the preliminary—

Question: The portable. The portable breath test that you used in this case.

Answer: On the preliminary breath test, no sir. No formal training.

Question: And you didn't personally check this particular instrument for calibration, you didn't have a Type–II to do that; is that correct?

Answer: A Type–II does that check. Yes, Sir.

Question: Okay. You don't have any personal knowledge as to whether you— you didn't do it; is that correct?

Answer: I did not, no, sir.

Question: Okay. And you didn't observe it being done either; is that correct?

Answer: No, sir.

Question: All right. And you understand, in connection with the administration of the PBT, that there are operating guidelines for using that particular instrument; is that correct?

Answer: Yes, sir.

Question: Okay. In fact, there's an operator's card which you brought to the hearing the last time when we went through that; do you recall that?

Answer: Yes, sir, I do.

Question: In this particular case, you contacted Mr. York at the roadblock at 1943 [7:43 p.m.], according to your report; is that correct?

Answer: Yes, sir, that is correct.

Question: And then, the time you've indicated that he was arrested was 1946 [7:46 p.m.]; is that correct?

Answer: Yes, indeed.

Question: All right. And so we know, then, that you did not have him under your observation for 15 minutes or 20 minutes prior to administering that test on him; isn't that true?

Answer: That is correct, sir.

Question: All right. And you don't have any understanding of how that instrument worked, internally, at the time that you administered it, either; is that true?

Answer: Oh, no, sir.

Question: And you didn't know if it was a fuel cell or a infrared-type devices; is that correct?

Answer: I do not know the mechanical workings of the preliminary breath test.

Question: Okay. Now a portable breath test is like any other field sobriety test, you use it to help develop probable cause; is that correct?

Answer: Yes, sir.

Question: Now, do you think—again, you're a reasonably prudent, cautious, trained police officer. Should such an officer know how to properly administer that test?

Answer: Yes, sir.

Question: Okay. And should such an officer have some basic understanding of how the instrument works, and how to utilize it and follow the operating guidelines for the use of the instrument?

Answer: Yes, sir.

Question: Okay. And in this particular case, you did not follow those operating guidelines; isn't that correct?

Answer: That is correct, sir.

Question: All right. And in your opinion, like any other field sobriety test, should an officer rely upon the results of an improperly administered field sobriety test when making a probable cause determination?

Answer: No, sir.

The testimony of the trooper controverts and discredits the Director's evidence for establishing probable cause for the arrest. While section 577.021 provides that a PBT shall be admissible as evidence of probable cause to arrest, the circuit court found that the trooper lacked the proper training to administer the PBT and that no evidence existed to establish that the device used was properly calibrated, maintained or even working at the time it was used. Consequently, the court found that any evidence as to the results obtained from this test was not credible. Because the evidence of the test's reliability was controverted, this Court gives deference to the trial court's determination on the credibility of that evidence.[15] The circuit court acted within its discretion when it ruled the PBT evidence not to be credible, and even assuming, arguendo, that the circuit court erred by excluding the PBT results, such an alleged error is harmless once the results were negated.

Additionally, the trooper was unable to recall if her observations, that York had problems with his balance, with walking and turning, and with his speech, were made prior to the arrest, as is required to establish probable cause. The credibility of this evidence is further strained with only three minutes elapsing between the time York made contact with the trooper and with him being placed under arrest. The circuit court correctly noted that the only uncontroverted indicia of York's intoxication were the smell of alcohol, the fact that York's eyes were watery, bloodshot and glassy, and York's admission to drinking one or two beers. However, the trial court, in its discretion, was free to draw the conclusion that there was no probable cause based upon its assessment of this evidence and the officer's own equivocation of the existence of probable cause.[16]

## V.

The judgment is affirmed.

All concur.

---

15. *Hinnah,* 77 S.W.3d at 621.

