Ronald Lynn NEER, Respondent,

v.

DEPARTMENT OF REVENUE, Appellant.

No. WD 65235.

Missouri Court of Appeals, Western District.

Oct. 24, 2006.

Heidi Doerhoff, Assistant Attorney General, Jefferson City, MO, for appellant.

Kelly Halford Rose, Odessa, MO, for respondent.

Before BRECKENRIDGE, P.J., HOWARD and HOLLIGER, JJ.

PATRICIA BRECKENRIDGE, Judge.

The Director of Revenue appeals the judgment of the trial court setting aside the director's suspension of Ronald L. Neer's driver's license. The director suspended Mr. Neer's driver's license, pursuant to section 302.505, RSMo 2000,[1] for driving a motor vehicle while the alcohol concentration in his blood was at or above .08%. In her sole point on appeal, the director claims that the trial court erred in reinstating Mr. Neer's driver's license because it erroneously declared and applied the law in its judgment and its judgment is against the weight of the evidence. Specifically, the director claims that the trial court erroneously determined that the arresting officer did not have probable cause to arrest Mr. Neer for violating an alcohol related offense. Because the trial court erroneously declared and applied the law, the judgment of the trial court reinstating Mr. Neer's driver's license is reversed. The cause is remanded for the trial court to render a decision under the correct law.

**Factual and Procedural Background**

The evidence at trial was that, on April 24, 2004, at approximately 5:37 P.M., Officer Josh Thompson and Sergeant Tom Long of the Higginsville Police Department were dispatched to the home of Ada Jo and Dave Periman in response to a reported disturbance between Mr. Periman and Mr. Neer. Although Officer Thompson and Sergeant Long concluded that a disturbance had not taken place, Officer Thompson informed Sergeant Long that he detected the odor of intoxicants on Mr. Neer and that he was going to conduct a driving-while-intoxicated investigation because Mr. Neer said that he had driven to the Perimans' residence. Based on his obser-

vations of indicia of intoxication, Mr. Neer's failure of field sobriety tests, and Mr. Neer's admission that he had consumed intoxicants, Officer Thompson arrested Mr. Neer for driving while intoxicated. The results of a breath test of Mr. Neer's blood alcohol content revealed that he had a blood alcohol content of .150%.

In accordance with section 302.505, the director suspended Mr. Neer's driver's license, following an administrative hearing, where it was determined that Mr. Neer was arrested upon probable cause to believe that he had driven a motor vehicle with a blood alcohol content of more than .08%. Mr. Neer filed a petition for a trial *de novo* in the Circuit Court of Lafayette County. After the trial *de novo*, the trial court found that the evidence presented by the director was not such that a reasonably trained, prudent police officer could believe that he had probable cause to arrest Mr. Neer for driving in violation of an alcohol related offense, thus, failing to prove a *prima facie* case. The trial court reinstated Mr. Neer's driving privileges. The director appeals.

**Standard of Review**

This court will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *York v. Dir. of Revenue*, 186 S.W.3d 267, 269 (Mo. banc 2006). The evidence will be viewed in the light most favorable to the judgment of the trial court, disregarding all contrary evidence and inferences. *Kimbrell v. Dir. of Revenue*, 192 S.W.3d 712, 714 (Mo.App. W.D.2006). The trial court's determination of the credibility of witnesses must be indicated.

given deference upon review. *York*, 186 S.W.3d at 269.

## Trial Court Misapplied the Law

The director claims that the trial court erred in reinstating Mr. Neer's driver's license because she established a *prima facie* case for the suspension of Mr. Neer's driver's license and the trial court misapplied the law. Specifically, the director asserts that the uncontroverted evidence established that Mr. Neer was arrested upon probable cause for violating an alcohol-related offense and that Mr. Neer's blood alcohol level exceeded the legal limit of .08%. She also claims that, in reaching its conclusion that she did not make a *prima facie* case, the trial court wrongly excluded evidence and required her to prove that Mr. Neer drove in a manner suggesting intoxication.

Under section 302.505, the director is required to suspend or revoke the license of any person upon determining that the person was arrested upon probable cause to believe such person was driving a motor vehicle with a blood alcohol concentration of .08% or more. A person who has received a notice of suspension or revocation can request an administrative hearing. Section 302.530.1.[2] A person aggrieved by a decision of the department may file a petition for a trial *de novo* in the circuit court of the county where the arrest occurred. Section 302.535.1.

■■■ Because Mr. Neer was aggrieved by the suspension of his driver's license, he filed a petition for a trial *de novo* in the Circuit Court of Lafayette County, under section 302.535.1. At the trial *de novo*, the burden of proof is on the director to establish grounds for suspension by a prepon-

derance of the evidence. *Verdoorn v. Dir. of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003). At trial, the director establishes a *prima facie* case for suspension under section 302.505 if the director presents evidence showing: (1) the driver was arrested on probable cause for violating an alcohol related offense; and (2) the driver's blood alcohol level exceeded the legal limit of .08%. *Coyle v. Dir. of Revenue*, 181 S.W.3d 62, 64 (Mo. banc 2005). The establishment of a *prima facie* case creates the presumption that there was probable cause for the arrest. *Nelson v. Fischer*, 190 S.W.3d 404, 407 (Mo.App. W.D.2006). Once the director establishes a *prima facie* case, the driver is entitled to rebut the *prima facie* case with evidence that there was not probable cause to arrest. *Id.* "[T]he director retains the burden of proof throughout the proceeding; the driver's burden is one of production-not persuasion." *Id. Coyle*, 181 S.W.3d at 65.

■■■ The director argues that she presented sufficient evidence to establish that the arresting officer had probable cause to arrest Mr. Neer for driving in violation of an alcohol related offense. "The probable cause required for the suspension or revocation of a driver's license is the level of probable cause necessary to arrest a driver for an alcohol-related violation." *York*, 186 S.W.3d at 270. Probable cause exists where the surrounding facts and circumstances indicate to "a reasonably prudent person that a particular offense has been or is being committed." *Id.* The director is not required to establish guilt beyond a reasonable doubt to prove probable cause. *Id.* The trial court views the facts as they would have appeared to a "prudent, cautious, and trained police officer." *Id.* The determination of whether there is probable

---

**2.** All statutory references to section 302.530 are to the 2005 Cumulative Supplement to the  Revised Statutes of Missouri 2000.

cause to arrest is based on the information known to the officer prior to the arrest. *Id.*

At the trial on Mr. Neer's petition, in making a case for the suspension of Mr. Neer's driver's license, the director presented the testimony of Officer Thompson and Sergeant Long and certified copies of the Department of Revenue's records, which included Officer Thompson's Alcohol Influence Report and Offense/Incident Report. Mr. Neer then testified on his behalf. Upon this record, the trial court found that Officer Thompson did not have probable cause to arrest Mr. Neer for driving in violation of an alcohol-related offense. The correctness of the trial court's finding that Officer Thompson lacked probable cause to arrest Mr. Neer for driving in violation of an alcohol related offense is determined by evaluating the "surrounding facts and circumstances" known by Officer Thompson, so it is necessary to review the evidence of the surrounding facts and circumstances and address the director's claim that evidence that should have been considered was improperly excluded by the trial court.

At trial, Officer Thompson testified that while he was speaking to Mr. Neer, he detected the odor of intoxicants on Mr. Neer's breath. Officer Thompson also noticed that Mr. Neer's speech was slurred and that Mr. Neer was having a difficult time understanding why he was there. He testified that Mr. Neer told him that he had arrived less than five minutes prior to Officer Thompson's arrival and that he had driven to the Periman residence. When Officer Thompson asked Mr. Neer if he had any alcoholic beverages that day, Mr. Neer stated that he had two beers while watching friends play cards. Officer Thompson again asked Mr. Neer if he had driven to the Periman residence, and Mr. Neer said that he had. Mr. Neer pointed to his vehicle, a white Suburban, when Officer Thompson asked him if a brown vehicle parked at the location belonged to him.

Officer Thompson testified that Mr. Neer was having a difficult time standing without swaying and walking in a straight line. He asked Mr. Neer to submit to the Horizontal Gaze Nystagmus Test and found six of six indicators that Mr. Neer was intoxicated. Officer Thompson testified that, after the test, Mr. Neer told him that the test would be invalid because he had consumed one beer at the Periman residence prior to Officer Thompson's arrival. Officer Thompson also testified that Mr. Neer's eyes were bloodshot, watery, and glassy. Officer Thompson testified that he administered a preliminary breath test that indicated that Mr. Neer's blood alcohol content was over the legal limit of .08%. Based on his experience and observations of Mr. Neer, Officer Thompson believed that Mr. Neer was impaired and placed him under arrest for driving while intoxicated. Officer Thompson testified that he transported Mr. Neer to the police department where Mr. Neer agreed to submit to a breath test of his blood alcohol content.

The director then offered Exhibit I, copies of the Department of Revenue's records relevant to the suspension of Mr. Neer's driver's license. Mr. Neer objected to the introduction of the records because "they contain hearsay upon hearsay." The trial court ruled that Exhibit I would be admitted "with limitation."

On cross-examination, Officer Thompson admitted that Mr. Neer had told him that he had a neurological disorder. Counsel for Mr. Neer then inquired whether there could be causes of nystagmus other than alcohol and, specifically, whether "certain neurological defects" can cause nystagmus. In response to the questioning, Officer

Thompson affirmed that, generally, certain neurological defects could cause nystagmus and that there are causes of nystagmus other than alcohol. Officer Thompson also affirmed that Mr. Neer told him that he had one beer while at the Periman residence.

During Sergeant Long's testimony, the director asked him whether either of the Perimans told him that Mr. Neer had just driven to the residence. The trial court sustained Mr. Neer's hearsay objection and admitted Sergeant Long's response "for the sole purpose of advising the court what the officer did next." In so ruling, the court stated that the statement was "strictly hearsay. It's out of the court statement unsworn by people. I don't know the veracity." Sergeant Long then testified that Ms. Periman told him that Mr. Neer had just driven to her residence. The director next asked Sergeant Long if either Mr. or Ms. Periman said that Mr. Neer had consumed any alcohol at their residence. The trial court sustained Mr. Neer's hearsay objection. The director made an offer of proof and, in that offer of proof, Sergeant Long testified that Mr. and Ms. Periman told him that Mr. Neer had not consumed alcohol at their residence. The director then reoffered any statements in Exhibit 1, the director's records, that were previously excluded as double hearsay. Mr. Neer again objected to any double hearsay statements within the records, and the trial court ruled that any such statements that had been admitted for a limited purpose or excluded during the testimony of the witnesses would, likewise, be admitted for a limited purpose or excluded upon the admission of Exhibit 1 in evidence. The director asked that any excluded statement in Exhibit 1 be considered as admitted in an offer of proof.

On cross-examination, Sergeant Long testified that Mr. Neer told him that he had a neurological disorder. Sergeant Long testified that he had spoken to Mr. Neer one time prior to this incident, and Mr. Neer's speech was also slurred on that occasion. When asked whether slurred speech was not unusual for Mr. Neer, Sergeant Long testified that Mr. Neer was also intoxicated when Sergeant Long spoke to him previously.

Mr. Neer then testified at trial. Mr. Neer testified that he has a neurological disorder called "benign essential tremor." He testified that it causes tremors in his upper extremities and that it affects his gait, walk, and speech. He testified that he "tried to explain" to the officers about his neurological disorder. Mr. Neer testified that he told Officer Thompson that he had been at the Periman residence for fifteen to twenty minutes, prior to going outside five minutes before Officer Thompson arrived. Mr. Neer further testified that he advised the officers that he had a beer while inside the Periman residence. On cross-examination, Mr. Neer admitted that he drank before he drove to the Periman residence.

The director recalled Sergeant Long for rebuttal evidence. Sergeant Long testified that Mr. Neer's speech pattern when testifying at trial was different than his slurred speech at the time he was arrested. He stated that, at the time of the incident, Mr. Neer's speech was slurred, like at trial, but was much more excitable and was faster and angrier than his slow speech when he testified.

The director's records, which were offered into evidence, included Officer Thompson's Alcohol Influence Report (AIR) and his Offense/Incident Report. The Offense/Incident Report also included a supplemental report prepared by Sergeant Long. The AIR included the information that, prior to Mr. Neer's arrest, Officer Thompson detected a moderate

odor of alcoholic beverage on Mr. Neer's breath; his eyes were watery, bloodshot, and glassy; Mr. Neer was swaying while walking and turning; and Mr. Neer's speech was slurred and confused. The AIR also noted the fact that Mr. Neer's attitude was standoffish and uncooperative. The results of the Horizontal Gaze Nystagmus Test recorded on the AIR indicated that in both his right and left eyes, Mr. Neer had no smooth pursuit, distinct nystagmus at maximum deviation and the onset of nystagmus before 45 degrees with some white showing. The AIR indicated that Mr. Neer had refused all other field sobriety tests and that the preliminary breath test was positive for alcohol. The report also included the information that Mr. Neer submitted to a chemical test on a Datamaster and his blood alcohol concentration by weight was .150%.

Officer Thompson's and Sergeant Long's narratives, in the Offense/Incident Report, of the events surrounding Mr. Neer's arrest were consistent with their testimony at trial, but provided greater detail. The portions of the Offense/Incident Report that the trial court excluded as hearsay were the statement that Ms. Periman made to Sergeant Long that Mr. Neer had driven to her residence and the statements that both Mr. and Ms. Periman made to Sergeant Long that Mr. Neer did not drink any alcoholic beverages at their residence.

Based on the testimony and the evidence presented at trial, the trial court found that no evidence was presented that would suggest that Officer Thompson, had he observed the vehicle when last driven by Mr. Neer, was driven in such a manner that would have justified the stop of the vehicle for any reason, let alone any probable cause to believe it was driven by someone intoxicated. The trial court found that it was difficult to believe that Officer Thompson found Ms. Periman's statement credible in light of the fact that Ms. Periman was well known to Officer Thompson, and he was investigating a possible disturbance between Mr. Neer and the Perimans. The trial court also noted Mr. Neer's testimony and the discrepancy in the evidence as to how long he had been at the Periman residence and whether he had consumed a beer at the Periman residence. The trial court further found that Officer Thompson was selective in the information he used to justify his actions and relied on untrustworthy hearsay information. The trial court ultimately concluded that the evidence presented by the director was not such that a reasonably trained prudent police officer could believe that he had probable cause to arrest Mr. Neer for driving in violation of an alcohol related offense.[3]

3. The trial court's findings and conclusions in the judgment read:

In all of the cases cited by the Director of Revenue the arresting officer saw the subject vehicle driving in an erratic manner, was advised by witnesses who observed erratic driving, came upon the vehicle off the traveled roadway, or saw the vehicle obviously in a recent accident and upon further investigation obtained information to believe the defendant was operating that motor vehicle while intoxicated. In this case there is no evidence from any one [sic] that would suggest the arresting officer had ... observed the vehicle when last driven by

this Petitioner, whenever that might have been, was then driven in such a manner that would have justified the stop of this vehicle for any reason, let alone any probable cause to believe it was driven by someone intoxicated.

Mrs. Periman, a person apparently well known to the arresting officer in his professional capacity and a person not unknown to the courts, according to the testimony of the arresting officer told him the Petitioner drove to 104 Fairground, Higginsville, Mo. It is difficult to believe the officer found her statements to be credible particularly in view of the fact that he was there because

The director contends that the trial court misapplied the law by improperly excluding portions of the Offense/Incident Report containing the statements of Mr. and Ms. Periman because section 302.312 provides that certified copies of the records of the director are "admissible as evidence in all courts of this state." Additionally, the director asserts that statements were admissible hearsay, as recognized in *Hunter v. Director of Revenue,* 75 S.W.3d 299 (Mo.App. E.D.2002).

■ First, the director is correct that, under section 302.312, "[c]opies of documents from the department of revenue are admissible as evidence if the copies are properly certified." *Hunter,* 75 S.W.3d at 303 (citations omitted). Furthermore, the hearsay statements of Mr. and Ms. Periman were admissible because "information given by eyewitnesses to the arresting officer directly, or through other officers is admissible to establish probable cause because it is not offered for its truth, but to explain the basis for a belief that probable cause to arrest existed." *Id.* (citation omitted). Therefore, the portions of the Offense/Incident Report containing the statements of Mr. and Ms. Periman were admissible as information known to Officer Thompson and relevant to the determina-

tion of whether probable cause to arrest Mr. Neer existed. Accordingly, the trial court erred in its ruling that Ms. Periman's statement that Mr. Neer drove to her residence was admitted for a limited purpose and in excluding the portions of the Offense/Incident Report containing the statements of Mr. and Ms. Periman that Mr. Neer did not consume any alcohol at their residence.

■ Further, the statements of the trial court when sustaining Mr. Neer's hearsay objections, at the conclusion of trial, and in the judgment, indicate the trial court's erroneous belief that the hearsay statements are unreliable and not competent evidence to show that the officer acted with probable cause. As noted previously, an arresting officer, such as Officer Thompson, can develop probable cause by considering all the information known to the officer, including hearsay statements. *Rain v. Dir. of Revenue,* 46 S.W.3d 584, 588 (Mo.App. E.D.2001) (citation omitted). The trial court erred in finding that Officer Thompson could not consider any hearsay statements of Ms. and Mr. Periman in determining whether there was probable cause to believe that Mr. Neer was driving while intoxicated.

of a "possible disturbance" involving the Petitioner on the one side and Mr. and Mrs. Periman on the other. The officer also testified the Petitioner told him he had driven there and arrived less than five minutes before the officer and had consumed a beer before the officer arrived. The Petitioner testified that he told the officer he "got there" about 20 minutes or so before the officer arrived[,] had consumed a beer and was standing outside in the back yard talking to Mr. Periman for five minutes before the officer arrived. Petitioner was apparently unknown to the arresting officer. The officer did not say where Petitioner's vehicle was parked or if it was improperly parked but stated only that Petitioner "pointed to" it when asked where it was.

Clearly the officer while at the scene to investigate an unfounded report of a "possible disturbance" observed Petitioner and suspected he might be intoxicated and then investigated to see if he could find any probable cause to arrest Petitioner for driving while intoxicated and in doing so used untrustworthy hearsay information and selected other information in an attempt to justify his actions.

This court finds that evidence presented by the Director of Revenue was not such that a reasonably trained prudent police officer could believe he had probable cause to arrest the Petitioner for driving in violation of an alcohol-related offence [sic] and therefore concludes the Director has failed to present a prima facie case on that issue.

The director also argues that the trial court erroneously declared and applied the law when it required the director to present evidence that Mr. Neer had driven his vehicle in a manner suggesting intoxication. The director correctly notes that there is no requirement that the arresting officer or another witness actually observe the subject driving or in an accident. "It is not necessary for an officer to actually see a person driving in order to have probable cause to arrest that person for driving while intoxicated, rather the officer may rely upon circumstantial evidence." *Kramer v. Dir. of Revenue*, 924 S.W.2d 308, 310 (Mo.App. W.D.1996). An officer may also rely on "information reported by citizen witnesses." *McFall v. Dir. of Revenue*, 162 S.W.3d 526, 531 (Mo. App. S.D.2005) (citation omitted). "Also, '[a]n arresting officer may establish probable cause that a person was driving from the person's admissions alone.'" *Id.* (citation omitted). In this case, the fact that Mr. Neer drove to the Periman residence is undisputed. Both at the time he was arrested and at trial, Mr. Neer admitted he drove to the Periman residence. This evidence was sufficient to meet the director's burden of making a *prima facie* case that Mr. Neer drove to the Periman residence.

The findings in the trial court's judgment indicate that the trial court imposed an additional burden upon the director of proving that there was evidence that Mr. Neer drove in a manner that suggested he was intoxicated. While erratic driving is a factor that can be considered in determining whether the officer had probable cause to believe the person arrested was intoxicated at the time the person was driving, there is no requirement that probable cause to believe the person was intoxicated must be related to the person's driving. If such a finding

were required, it would be impossible for an officer ever to establish probable cause to believe a driver was operating a motor vehicle while intoxicated based solely on the driver's appearance and behavior *after* the initial stop. This, however, is not the law. Under section 302.500–302.540, there is no requirement that the director must "demonstrate that the officer had probable cause to believe the driver was violating an alcohol-related offense prior to the initial stop." *Roach v. Dir. of Revenue*, 941 S.W.2d 27, 30 (Mo.App. S.D.1997). *See also Sullivan v. Dir. of Revenue*, 936 S.W.2d 580, 581 (Mo.App. S.D.1996) ("specific probable cause to make an arrest for an alcohol related traffic violation and in turn to support an administrative license suspension, may be developed after a motorist is otherwise properly stopped").

In *Gelsheimer v. Director of Revenue*, 845 S.W.2d 107 (Mo.App. W.D.1993), a refusal case, the trial court imposed the same additional burden on the director as the trial court attempted to impose on the director, here. Specifically, the trial court found "that an arresting officer cannot reasonably conclude that a driver was operating a motor vehicle while intoxicated based solely on the driver's appearance and behavior after the initial stop, *without observing any illegal or unusual operation of the motor vehicle before the stop.*" *Gelsheimer*, 845 S.W.2d at 108 (emphasis added). This court, however, found that because an officer is not required to have reasonable grounds that a driver was operating a motor vehicle in an intoxicated manner before he makes the initial stop, the trial court erred. *Id.* Rather, the court found that even though the arresting officer did not observe any erratic driving, evidence of intoxication, including the odor of alcohol, bloodshot and glassy eyes, trouble maintaining balance, and failure to satisfactorily perform three field sobriety tests was sufficient to establish that the

arresting officer had reasonable grounds to believe that the driver had been driving while intoxicated. *Id.* at 108–09. Consequently, in imposing this additional burden on the director, this court found that the trial court misapplied the law. *Id.* at 109. Likewise, in this case, the trial court erroneously declared and applied the law in finding that, in order to establish probable cause, Officer Thompson or another witness had to observe Mr. Neer driving his vehicle in a manner suggesting intoxication.[4]

Because the trial court misapplied the law, the judgment of the trial court reinstating Mr. Neer's driver's license is reversed. The cause is remanded to the trial court to render judgment under the correct law.[5]

All concur.

---

4. Additionally, in its ruling, the trial court made a number of findings of fact that do not appear to be supported by the record. For example, the trial court found that Officer Thompson did not say where Mr. Neer's vehicle was parked, when the record shows that Officer Thompson's testimony referred to the brown vehicle that was parked next to Mr. Neer's vehicle as being "at the location." Additionally, the trial court refers to the "possible disturbance" as a basis for Ms. Periman to be untruthful, but in another portion of its judgment determined that the report of the "possible disturbance" was unfounded.

5. Prior to the Missouri Supreme Court's holding in *York v. Director of Revenue*, 186 S.W.3d 267 (Mo. banc 2006), the question of whether probable cause to arrest existed was an issue of law that could be determined by this court *de novo*, without giving any deference to the

trial court's discretion in determining whether there was probable cause. *Guhr v. Dir. of Revenue*, Case No. W.D. 65762, August 29, 2006, slip op. at 12–13, —— S.W.3d ——, —— –—— (Mo.App.W.D.2006) (citing *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 1661–62, 134 L.Ed.2d 911 (1996), and *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002)). The Missouri Supreme Court, in York, however, found that, on appeal, deference should be given because "the trial court, in its discretion [is] free to draw the conclusion that there was no probable cause" based upon its assessment of the uncontroverted evidence. 186 S.W.3d at 272. Therefore, it is necessary to remand to the trial court for it to exercise its discretion in determining whether there was probable cause.