Donna HOLLOWAY, Respondent,

v.

DIRECTOR OF REVENUE, State of Missouri, Appellant.

No. SD 30248.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 21, 2010.

---

1. All statutory references are to RSMo.2000, unless otherwise indicated.

Chris Koster, Attorney General and Jonathan H. Hale, Special Assistant Attorney General, Jefferson City, for Appellant.

John M. Albright, Poplar Bluff, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

On February 25, 2009, the Director of Revenue ("the Director") revoked the driving privileges of Donna Holloway ("Respondent") pursuant to section 577.041 [1] after she refused to submit to a chemical test to determine her blood alcohol content ("BAC"). On August 17, 2009, a post-revocation hearing was conducted and the trial court found in favor of Respondent and ordered the Director to remove the revocation from her driving record. This

---

1. All statutory references are to RSMo Cum. Supp.2009, unless otherwise indicated.

appeal followed. We affirm the judgment of the trial court.

### Facts and Procedural History

Corporal Barry Matthews ("Corporal Matthews"), of the Missouri State Highway Patrol, worked the overnight shift from the evening of February 9, 2009 until 3:00 a.m., on February 10, 2009. By 11:30 a.m., on February 10, he was back on duty for a court appearance that lasted approximately two hours. Later that same day he began an evening shift. At 10:30 p.m., near the end of his shift, he was en route to his residence when he observed a vehicle in the median of Highway U.S. 67 and stopped to investigate. It was raining at the time.

When Corporal Matthews approached the passenger side of the vehicle he found Respondent sitting in the driver's seat with the engine running. He told her to roll down the window. Respondent appeared confused and lowered both back windows before she finally found the button to lower the passenger-side window where Corporal Matthews was standing. Since Respondent did not appear to be injured, Corporal Matthews requested that she exit the vehicle. Respondent smelled strongly of alcohol, had significant difficulty walking, and could not stand without swaying. Because it was muddy in the median, Corporal Matthews assisted Respondent up to the shoulder of the road.

At one point, he had to stop her from walking into traffic.

Corporal Matthews then administered the Horizontal Gaze Nystagmus ("HGN") test and Respondent exhibited all six indicators of intoxication. No other standardized field sobriety tests (SFST's) were performed, and no other investigation was completed prior to Respondent's arrest. Based on Corporal Matthews' observations—the unsteady walking, the swaying while standing, the HGN results, the odor of alcohol, bloodshot and watery eyes, confused speech, and the totality of the circumstances—he was absolutely certain Respondent was intoxicated and arrested her for driving while intoxicated ("DWI"). Respondent's arrest was completed in a short period of time after Corporal Matthews' initial contact with her.

Corporal Mike Slaughter ("Corporal Slaughter") arrived at the scene, but remained in his vehicle until Corporal Matthews arrested Respondent. Following the arrest, Respondent was turned over to Corporal Slaughter to complete the investigation and process Respondent since Corporal Matthews was tired from his demanding work schedule and "due off the next day." Corporal Slaughter transported Respondent to the sheriff's department where he read her Missouri's implied consent law.[2] Respondent requested an opportunity to speak with an attorney and was provided approximately twenty minutes to do so. Corporal Slaughter again

---

2. Any person in Missouri who drives on public highways is deemed to have consented to a "chemical test" in order to determine the alcohol or drug content of the driver's blood after being arrested "for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition." § 577.020.1. If the driver refuses a chemical test after being arrested, the officer is to forward a sworn report to the director that includes a statement that the officer had reasonable grounds to believe the individual was driving while intoxicated and refused a chemical test. § 577.041.2. The director is then required to revoke the individual's driving privileges for one year. § 577.041.3; *see Hager v. Director of Revenue*, 284 S.W.3d 192, 193 (Mo.App. S.D.2009). The driver may request a post-revocation hearing in the county where the arrest occurred. § 577.041.4.

advised Respondent of the implied consent law and requested a breath test and a blood sample. She refused both requests. Corporal Slaughter signed and completed an Alcohol Influence Report ("AIR") for Respondent.

The Director notified Respondent that her license would be revoked on February 25, 2009, pursuant to section 577.041. Respondent subsequently filed a petition for a post-revocation hearing.

On August 17, 2009, at the hearing of this matter, Corporal Matthews testified that out of concern for Respondent's safety, and due to the rainy weather conditions, he did not perform additional SFST's. He did not carry a portable breathalyzer. He testified that he asked Respondent why she was in the median, but could not recall her answer. Further, he did not remember if he asked Respondent if she had been drinking. There was also no evidence that Corporal Matthews ever requested her license, registration, or proof of insurance.

Corporal Matthews also testified regarding the HGN test. He admitted his initial HGN training preceded the National Highway Traffic Safety Administration's ("NHTSA") approval of the test, but could not recall whether or not he had received any training on the HGN exam after NHTSA standardized the exam. He acknowledged the possibility that his HGN test training was designed to indicate the probability an individual would have a BAC over .10 percent if they had all six indicators. The legal presumed limit at the time of Respondent's arrest was only .08 percent BAC. He did not know the accuracy of the HGN examination, how many times each sequence of the HGN exam should be performed, nor how far from the test subject's eyes the visual stimulus should be held. He testified that the standardized procedure could be administered in different ways on different people. Corporal Matthews testified that even without the HGN results, his conclusion was that Respondent was intoxicated.

At the hearing, Corporal Slaughter testified he observed most of the indicia of intoxication that Corporal Matthews observed, but that his observations were after Respondent was placed under arrest and would not have any effect with regard to probable cause for the arrest. On cross-examination, Corporal Slaughter testified the HGN test takes just a little over a minute to administer, and a DWI arrest could possibly be completed in less than two minutes. Corporal Slaughter also testified regarding the AIR he completed for Respondent. He acknowledged the observations in the report were from him and Corporal Matthews. According to the AIR, the time of initial contact was "2332" and the time of the arrest was "2335." [3] Corporal Slaughter agreed that this time frame could correspond to three-plus minutes or just a minute and a few seconds, depending upon the location of the second hand.

Respondent contested all of the Director's evidence during cross-examination. She also testified that she spoke to an attorney and was given two opportunities to consent to a breath test but refused both.

The trial court ordered the Director to reinstate Respondent's driving privileges, based upon the sole finding that the Director failed to produce evidence of probable cause for the arrest. Specifically, the trial court found that: (1) "the arrest could have occurred in as little as one minute and some odd seconds"; (2) the HGN test

3. Corporal Slaughter testified that he transposed the times and the report should have stated "2232" hours and "2235" hours. We find this explanation plausible.

was not in compliance with NHTSA standards and, therefore, was unreliable; and (3) the AIR was a memorialization of Corporal Slaughter's post-arrest observations. The Director filed a timely Notice of Appeal.

The Director contends the trial court erred in reinstating Respondent's driving privileges and concluding there was no probable cause to arrest Respondent for DWI because substantial evidence in the record supported a finding of probable cause. Respondent contends the trial court correctly determined there was not sufficient probable cause. The sole issue for review is whether the trial court was persuaded the officer had reasonable grounds to believe Respondent was driving while intoxicated.

## The Statutory Framework

■ The only three issues to be decided at a post-revocation hearing are: "(1) whether or not the person was arrested or stopped; (2) whether the officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; and (3) whether or not the person refused to submit to the test." *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002); § 577.041.4. "If the court determines any issue not to be in the affirmative, the court shall order the director to reinstate the license or permit to drive." § 577.041.5.

4. In *White*, the Supreme Court of Missouri overruled prior decisions to the extent those decisions held section 302.535 created a presumption of validity of the director's evidence, placed a burden on the driver to produce evidence that controverts or contradicts the director's evidence for the trial court to disbelieve the evidence on a contested issue, or required written factual findings absent a

■ At the hearing, the burden of proof rests on the Director. *Hinnah*, 77 S.W.3d at 620. The Supreme Court of Missouri has explained:

When the burden of proof is placed on a party for a claim that is denied, the trier of fact has the right to believe or disbelieve that party's uncontradicted or uncontroverted evidence. *Bakelite Co. v. Miller*, 372 S.W.2d 867, 871 (Mo.1963). If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party. *Id.* 'Generally, the party not having the burden of proof on an issue need not offer any evidence concerning it.' *Stiff v. Stiff,* 989 S.W.2d 623, 628 (Mo. App.1999).

*White v. Director,* 321 S.W.3d 298, 305 (Mo. banc 2010).[4]

## Standard of Review

■ The trial court's probable cause determination is reviewed in a two-step analysis: (1) a determination of the historical facts; and (2) the application of the law to those facts. *White,* 321 S.W.3d at 309–11. In the first part of the analysis, we review the probable cause[5] determination under an abuse of discretion standard and give deference to the inferences the trial court makes from historical facts, including any credibility determinations. *White,* 321 S.W.3d at 310–11.

Only if the trial court's judgment is clearly erroneous will an appellate court reverse. This standard of review gives appropriate deference to the trial court's

request by a party. 321 S.W.3d at 307–08. The holding in *White* is equally applicable to section 577.041 cases as both statutes involve similar administrative procedures.

5. "Reasonable grounds" is virtually synonymous with "probable cause." *Edmisten v. Director of Revenue,* 92 S.W.3d 270, 273 (Mo. App. W.D.2002).

ability to weigh the credibility of the witnesses, and acknowledges the inability of an appellate court to determine credibility from the lifeless pages of a record. Thus, if the trial court's ruling is plausible in light of the record viewed in its entirety, this Court 'may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'

*Id.* (quoting *State v. Milliorn,* 794 S.W.2d 181, 183 (Mo. banc 1990)).

▇ In the second step, the Court must determine, under *de novo* review, if these historical facts satisfy the relevant statutory standard. *White,* 321 S.W.3d at 310–11.

▇ Further, "[i]n reviewing a particular issue that is contested, the nature of the appellate court's review is directed by whether the matter contested is a question of fact or law." *White,* 321 S.W.3d at 308. Questions of law are reviewed *de novo,* while deference is given to the factfinder when reviewing questions of fact. *Id.* "When the facts relevant to an issue are contested, the reviewing court defers to the trial court's assessment of the evidence." *Id.*

The Director's evidence was contested in this case. The Respondent cross-examined and challenged the evidence submitted by the Director. *See White,* 321 S.W.3d at 308–09 (finding a party can contest evidence by cross-examination or by pointing out internal inconsistencies in the evidence). There were no formal findings of fact or conclusions of law requested, pursuant to Rule 73.01;[6] however, the trial court did recite certain findings in its judgment indicating it did not find some of the evidence credible and adequate to support a finding of probable cause.

## Analysis

▇ Probable cause exists when a police officer observes illegal operation of a motor vehicle and observes indicia of intoxication upon coming into contact with the motorist. *York v. Director of Revenue,* 186 S.W.3d 267, 270 (Mo. banc 2006), *overruled on other grounds by White,* 321 S.W.3d at 301–03. The probable cause analysis is an objective standard and requires consideration of all the information in the officer's possession prior to arrest. *Guhr v. Director of Revenue,* 228 S.W.3d 581, 585 n. 3 (Mo. banc 2007), *overruled on other grounds by White,* 321 S.W.3d at 301–03; *Hinnah,* 77 S.W.3d at 621. The court must assess the facts by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer. *York,* 186 S.W.3d at 270. SFST's are not mandatory, but merely aid the officers' probable cause determination. *Chancellor v. Lohman,* 984 S.W.2d 857, 858 (Mo.App. W.D.1998) (SFST's not performed for safety reasons); *Hunt v. Director of Revenue,* 10 S.W.3d 144, 146 (Mo.App. E.D.1999) (SFST's not performed due to weather conditions).

Based upon our review of the record in this case, the trial court found the short time between the initial contact and arrest significant on whether it was persuaded on the requirement of probable cause. The short time frame alleged was only one of multiple factors calling into question the existence of probable cause.

The trial court also questioned the propriety of Corporal Matthews' administration of the HGN test and determined it was not in compliance with NHTSA standards. This was reasonable considering Corporal Matthew's testimony that his HGN test training was received prior to NHTSA approval of the test and when the

6. All rule references are to Missouri Court Rules (2009).

presumed limit of intoxication was .10 percent. Moreover, he could not recall if he had received any training on the HGN exam after it was standardized by NHTSA. Further supporting this finding was his testimony that the *standardized procedure* could be administered in different ways on different people, that he did not know how many times each sequence of the HGN exam was performed, nor how far from the test subject's eyes the visual stimulus should be held. These facts reasonably call into question the reliability of the HGN test administered to Respondent.

The trial court's judgment questioned the credibility of a portion of Corporal Matthews' observations because he could not recall Respondent's answers to questions inquiring why she was in the median and whether she had anything to drink. He did not observe her operating the vehicle. Significantly, the trial court correctly noted the AIR was only signed by Corporal Slaughter, who admitted his observations were only *post-arrest* and would not have any effect with regard to establishing probable cause for the arrest. The judgment reflects the trial court's careful consideration of the testimony and we give deference to the trial court's inferences on witness credibility.

The trial court did not believe the officers' testimony enough, or enough of their testimony, to find that the Director carried her burden of proof. We defer to that credibility assessment, which is not to say that the same testimony would not support revocation if believed. *White* properly instructs us to respect trial court credibility decisions, which here compel us to affirm.

The Director also argues that the trial court misapplied the law by its reliance on *York* and *Hinnah.* However, the argument presented is not actually one of misapplication of the law; rather the Director simply argues the facts in *York* and *Hin-*

*nah* are distinguishable from this case. We disagree.

■ Whether probable cause exists always depends on the particular facts of the case.

> Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense.... There is no precise test for determining whether probable cause exists; rather, it is based on the particular facts and circumstances of the individual case.

*White,* 321 S.W.3d at 312 (quoting *Guhr,* 228 S.W.3d at 584–85).

The trial court recognized in *York* that our supreme court held there was not probable cause to arrest when the only uncontroverted indicia of intoxication was the odor of intoxicants; watery, glassy and bloodshot eyes; and an admission that York drank one or two beers. The trial court also noted the arresting officer's testimony was strained when only three minutes elapsed between the time he made contact with York and the time of arrest. Considering the facts in the present case, it was not unreasonable for the trial court to compare the facts of this case with those in *York.*

The trial court also reasonably relied on *Hinnah,* where our supreme court held there was not probable cause for an arrest when the officer observed Hinnah in a truck with the engine running parked along side the interstate. Hinnah was in the passenger seat and upon contact, the officer determined there was a strong odor of alcohol on his breath; his eyes were watery, glassy and bloodshot; and he had difficulty maintaining his balance. The trial court could reasonably conclude there was comparable, or even less information available to Corporal Matthews than to the arresting officer in *Hinnah.*

In considering the record in its entirety, including the timing of the arrest, uncertain reliability of the HGN test results, Corporal Matthews' inability to recall key facts prior to the arrest, the fact that Corporal Slaughter's observations were largely post-arrest, and the standard of review, we find the trial court's judgment and view of the evidence plausible. This Court defers to the trial court's view of the evidence and will not second-guess the trial court's judgment on contested facts. *White*, 321 S.W.3d at 312–13. The trial court was free to believe or disbelieve any or all of the contested evidence and find no probable cause based on its determination and credibility of the Director's evidence. The trial court was not persuaded the officer had reasonable grounds to believe Respondent was driving while intoxicated. The trial court's determination that there was no probable cause was not an abuse of discretion. The trial court's judgment does not shock the sense of justice or indicate a lack of careful consideration.

That judgment is affirmed.

SCOTT, C.J., and BATES, J., concur.