Todd A. BROWN, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. SC 84690.

Supreme Court of Missouri,
En Banc.

Sept. 24, 2002.

Jeremiah W. (Jay) Nixon, Atty. Gen., John Mollenkamp, Asst. Attorney General, for Appellant.

Carl M. Ward, Clayton, for Respondent.

PER CURIAM.[1]

The director of revenue appeals from a judgment reinstating the driving privileges of Todd A. Brown. The appeal follows a trial de novo after an administrative hearing upheld the director's suspension/revocation of Brown's license pursuant to section 302.505.[2] At the time of Brown's arrest, that section allowed suspension or revocation upon a determination that there was probable cause to believe a person had operated a motor vehicle while in an intoxicated condition with a blood alcohol concentration of .10 percent or more by weight.[3] The trial court concluded that although Brown's blood alcohol concentration at the time of his arrest for suspicion of driving while intoxicated was above the .10 percent threshold, the arresting officer lacked probable cause to believe Brown was in that condition. The director correctly contends that the trial court's judgment, that the arresting officer lacked probable cause, is against the weight of the evidence and misapplies the law. That judgment is reversed, and the case is remanded.

At approximately 3:30 a.m. on February 6, 2000, Corporal R.D. Reid, of the West Plains police department, observed a Chevrolet Blazer make an illegal left turn. Reid drove up behind the vehicle and activated the patrol unit's emergency lights. When the Blazer failed to stop, Reid activated the siren. At this point Reid observed the vehicle cross or hit the centerline twice, which Reid indicated would "in and of itself constitute a traffic violation." Reid testified that Brown continued driving more than a normal distance before pulling over, although a paved shoulder was available prior to where Brown eventually stopped. As Reid approached Brown, he noticed a strong odor of intoxicants and that Brown's eyes were watery and bloodshot. Reid asked Brown to exit the vehicle and walk to the patrol unit, during which time Reid observed Brown swaying, or "taking heavy steps," while walking. Once Brown was inside the patrol unit, Reid was able to identify that the strong odor of intoxicants was emanating from Brown.

Based on Reid's observations of Brown, including the driving, swaying, and odor of intoxicants, Reid formed an opinion that Brown was under the influence of alcohol. Therefore, Reid requested that Brown submit to a set of field sobriety tests so that Reid could determine if Brown was "too intoxicated to be driving." Brown agreed to perform the field sobriety tests, and Reid administered three of them-the horizontal gaze nystagmus (HGN), the heel-to-toe (also referred to as the walk-and-turn), and the one-leg stand. Reid determined that Brown failed each of the tests. Before and during the administration of the field sobriety tests, Reid also

---

1. This Court transferred this case after an opinion by the Court of Appeals, Southern District. *Mo. Const. article V, section 10.* Portions of that opinion are incorporated without further attribution.

2. All statutory references are to RSMo 2000.

3. Effective September 29, 2001, the threshold blood alcohol concentration level in section 302.505.1 was lowered to .08 percent.

noticed Brown's slurred speech and Brown's poor ability to follow directions.

Reid testified that he routinely used the above-mentioned field sobriety tests and would typically rely on their results in making a probable cause determination. Reid further testified that, based on his observations of Brown and Brown's performance on the field sobriety tests, Reid formed the opinion that Brown was driving while intoxicated. Reid subsequently arrested Brown for "operat[ing] a motor vehicle while in an intoxicated condition," in violation of a municipal ordinance of the city of West Plains. Brown also received citations for the improper turn and "fail[ure] to keep right by crossing the centerline." After transporting Brown to the West Plains police department, Brown consented to a breath analysis test, which showed a blood alcohol concentration of .129 percent.

During the trial, Brown admitted to drinking six twelve-ounce bottles of beer between 10:00 p.m. on February 5, 2000, and 3:00 a.m. on February 6, 2000. Also at trial, Brown presented an expert witness, William Taylor, who testified extensively regarding the proper administration of the three field sobriety tests used by Reid, particularly the standards established by the National Highway and Traffic Safety Administration. Taylor provided detailed testimony outlining how Reid failed to follow proper procedures in his administration of the three tests. According to Taylor, because of the improper administration, no reasonably prudent, trained, or cautious police officer would rely upon the results in either a probable cause determination or a determination of whether Brown was intoxicated.

■ On June 8, 2001, the trial court entered "Findings and Judgment" in the case. The trial court found that Taylor's testimony "comprehensively deconstructed ... Reid's procedure in the administration of each of the three tests .... [and] that there was little doubt of ... Reid's irregular administration of each of the three standard procedures." Therefore, the trial court determined that the results of the field sobriety tests must be disregarded. The trial court also found that "Reid attested *his* probable cause determination is made *solely on the basis of field sobriety test results.*" The trial court concluded "that although a preponderance of the evidence shows that [Brown's] alcohol concentration at the time of arrest was above ten one-hundredths of one percent or more by weight and that [Brown] was arrested on suspicion of driving in that condition, nevertheless, the arresting officer *lacked probable cause to so believe.*" Therefore, the trial court ordered the director to reinstate Brown's driving privileges. Although the judgment demonstrates careful consideration and sets out in great detail the failure of the officer to properly conduct field sobriety tests, the court appears to have applied the wrong standard. *See Soest v. Director of Revenue,* 62 S.W.3d 619, 621 (Mo.App.2001).[4] The proceeding is civil rather than criminal and is not a trial of the issue of intoxication. *Id.* The issue, rather, is whether a prudent, cautious and trained officer had reasonable

4. Some of the cases used as part of the analysis were reviews of proceedings held under section 577.041, where the trial court must determine, *inter alia,* "whether the arresting officer had reasonable grounds to believe that the person was driving while intoxicated." *Hawkins v. Director of Revenue,* 7 S.W.3d 549, 551 (Mo.App.1999). Within these cases, "reasonable grounds" is considered "synonymous with probable cause." *Id.* Thus, the probable cause determinations in these cases will be discussed along with those cases that involved procedures following revocation or suspension pursuant to section 302.505 without distinction.

grounds to believe the arrestee was driving while intoxicated. *Id.*

■■■ The probable cause required for the suspension or revocation of a driver's license is the level of probable cause necessary to arrest a driver for an alcohol-related violation. *Aron v. Director of Revenue*, 737 S.W.2d 718, 719 (Mo. banc 1987). That level of probable cause will exist "when a police officer observes an unusual or illegal operation of a motor vehicle and observes indicia of intoxication upon coming into contact with the motorist." *Rain v. Director of Revenue*, 46 S.W.3d 584, 587 (Mo.App.2001). Probable cause, for the purposes of section 302.505, will exist "when the surrounding facts and circumstances demonstrate to the senses of a reasonably prudent person that a particular offense has been or is being committed." *Smyth v. Director of Revenue*, 57 S.W.3d 927, 930 (Mo.App.2001). The level of proof necessary to show probable cause under section 302.505 "is substantially less than that required to establish guilt beyond a reasonable doubt." *Id.* "There is a 'vast gulf' between the quantum of information necessary to establish probable cause and the quantum of evidence required to prove guilt beyond a reasonable doubt." *Rain*, 46 S.W.3d at 588. The trial court must assess the facts "by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer." *Cox v. Director of Revenue*, 37 S.W.3d 304, 307 (Mo.App.2000).

The testimony of Brown's expert, Taylor, as well as Reid's own testimony, provided substantial evidence to support the trial court's determination that Reid improperly administered all three tests and that, therefore, the test results may be disregarded and not provide a basis for the probable cause determination.

■■■ Having determined that the trial court could disregard the field tests results

in the probable cause determination, next considered is whether Reid's testimony precluded any other evidence from being used in the probable cause determination. On direct examination, the director asked the following line of questioning:

Q: Now, when you make a DWI arrest, do you make some sort of determination initially when you make contact with the driver as to whether you believe he's— he's intoxicated?

A: No, sir.

Q: What do you do?

A: Upon contact, if I believe they've been drinking, they're requested to perform the field sobriety tests.

Q: And why do you have them perform field sobriety tests?

A: To make my determination if they've had too much to drink to be driving.

Later, also on direct, the following line of questioning took place:

Q: What did you do next with [Brown]?

A: I then asked [Brown] if he would be willing to submit himself to some field sobriety tests.

Q: Now, why would you request him to do field sobriety tests at that point in time?

A: Because it was my belief at the time that he was under the influence of alcohol. And I would request him to do the field sobriety so I could determine if he was, in my opinion, too intoxicated to be driving.

Q: Was this just a hunch, or what did you base that—

A: On—

Q:—that opinion on?

A: On my observations of [Brown], with the driving and the swaying and then the odor of intoxicants.

One last exchange occurred on direct examination that addressed Reid's probable cause determination.

Q: Now, based upon your observation of [Brown], your general observations and his performance on the field sobriety tests, were you able to form an opinion as to whether or not you believed that he was driving while intoxicated?

A: Yes, sir.

Q: And what was that opinion?

A: That I did believe that he was driving while intoxicated.

Q: Now, you indicated that you routinely use these particular—three particular field sobriety tests, correct?

A: Yes, sir.

Q: And these are something that—the results of which you rely upon in making a probable cause determination, correct?

A: Yes, sir.

Reid was also questioned on cross-examination about his probable cause determination. During cross-examination by Brown, the following exchange occurred:

Q: Okay. Was [Brown] free to leave the scene at that point that you asked him to walk to your car?

A: I think at that time that I would have been investigating him for possibly driving the vehicle while intoxicated, so—No.

Q: You hadn't determined you were going to arrest him for DWI at that point in time, did you?

A: No, sir. I had not.

. . . .

Q: All right. Before you began the field sobriety tests, [Brown] was still under investigation for DWI. And you hadn't yet determined you had probable cause to arrest him. Is that a fair statement?

A: Yes, sir. That is a fair—

Q: Okay. As a reasonably prudent, cautious, trained police officer, you felt it was appropriate to administer those tests so you could determine whether or not you did have probable cause?

A: Yes, sir.

Q: That a fair statement?

A: That's a fair statement.

There was one last exchange regarding probable cause, which occurred during redirect by the director.

Q: Now, you testified earlier on direct that you utilize these field sobriety tests to determine—to make probable cause determination, right? As to whether to arrest a subject; is that correct?

A: Yes, sir.

Q: Is that what you personally rely upon them to do?

A. Yes, sir.

Q: And you did so in [Brown's] arrest?

A: Yes, sir.

There has not been a case in Missouri in which, as here, the results of a field sobriety test were disregarded because of improper administration; however, cases have involved situations where no field sobriety tests were given, the driver refused to submit to the tests, or tests results were disregarded due to a physical impairment of the driver. *See, e.g., Soest*, 62 S.W.3d at 621; *Hawkins v. Director of Revenue*, 7 S.W.3d 549, 551 (Mo.App.1999); *Chancellor v. Lohman*, 984 S.W.2d 857, 858 (Mo. App.1998). Within the cases, "[p]robability and reasonableness characterize the concept of probable cause." *Cox*, 37 S.W.3d at 307. Thus, the reviewing courts have considered probable cause "a fluid concept and, as such, [found it] turns on the assessment of the probabilities in particular factual concepts." *Id.*

In *Soest*, the trial court was reversed and the appellate court found probable cause when the officer witnessed the driver leave the roadway momentarily and continue to weave after making a U-turn. *Soest*, 62 S.W.3d at 621. The driver admitted that she had one beer several hours earlier, but the officer noted no other signs of intoxication, observing that the driver's speech was coherent and she was cooperative. *Id.* The officer conducted the same three field sobriety tests as in the case at bar, indicated that the driver failed each one, and testified that he based his probable cause determination on the driver's failure of the tests. *Id.* The driver, however, advised the officer that she had bad knees, which would affect her ability to perform the one-leg stand and walk-and-turn test. *Id.* The appellate court determined that probable cause existed even if the results of those two tests were disregarded, given the failure of the HGN test and the other observations of the officer. *Id.*

In *Chancellor v. Lohman*, the arresting officer did not conduct field sobriety tests because he determined they would be unsafe, given the driver's difficulty standing and the ground's steep plane. *Chancellor*, 984 S.W.2d at 858. The appellate court reversed the trial court's determination on probable cause, noting that field sobriety tests are not mandatory, as they "merely are an aide to an officer's other observations in determining whether he has probable cause for an arrest." *Id.* The appellate court determined that there were ample facts and circumstances present, even without field sobriety test results, on which the officer could have based his probable cause determination. *Id.* In particular, the officer had a report that this vehicle had been driven erratically immediately prior to the officer stopping him for speeding, the officer detected a strong odor of alcohol on the driver's breath, the driver admitted to drinking alcohol that evening, a glass containing whiskey was found in the vehicle, the driver was unsteady on his feet, the driver's movement and speech were slow, and the driver's eyes were bloodshot and glassy. *Id.*

In *Hawkins v. Director of Revenue*, the driver refused to submit to field sobriety tests, yet the appellate court reversed the trial court and found that the officer had probable cause to arrest the driver for driving while intoxicated. *Hawkins*, 7 S.W.3d at 551. The officer witnessed the driver weave over the center line three times, the officer detected a strong odor of alcohol on the driver's breath, the driver's eyes were watery and bloodshot, the driver swayed while he walked, the driver's speech was slurred, and the driver admitted to drinking a six pack of beer. *Id.*

In *McCabe v. Director of Revenue*, 7 S.W.3d 12, 14 (Mo.App.1999), the appellate court reversed the trial court and found the arresting officer had probable cause based on the driver's erratic driving and odor of alcohol on his breath, even though the driver refused to submit to field sobriety tests. Likewise in *Rain v. Director of Revenue*, which also involved the refusal of the driver to submit to field sobriety tests, the appellate court reversed the trial court on its finding that the arresting officer lacked probable cause because of information the officer had regarding the driver's speeding, the driver providing false information regarding traffic signals at an intersection that was actually a four-way stop, the driver's glassy and bloodshot eyes, as well as his slurred speech, unsteady balance, and trouble concentrating. *Rain*, 46 S.W.3d at 588.

In *Smyth v. Director of Revenue*, the appellate court determined the probable cause prong in reversing a section 302.505

revocation or suspension was met based on the driver's erratic driving, slurred speech, swayed walking, admission to consumption of alcohol, and failure of the HGN test. *Smyth,* 57 S.W.3d at 930–31. *See also Peters v. Director of Revenue,* 35 S.W.3d 891, 893 and 896–97 (Mo.App.2001)(probable cause existed based on the driver's speeding, watery and glassy eyes, odor of intoxicants, and failure of the HGN test, which was the only field sobriety test conducted due to the slope of the ground and the driver's claimed arthritis).

Brown counters that the judge did not err because, given the trial court's role of determining credibility and the weight to assign to the evidence, the court could have found for the driver on all factual issues concerning probable cause. Brown is correct when he enunciates the principle that the credibility of the witnesses is for the trial court to determine. *See Hawk v. Director of Revenue,* 943 S.W.2d 18 (Mo. App.1997). "[W]hen the evidence supporting revocation is uncontroverted and the trial court has not specifically found the director's witness incredible, appellate courts will not presume that the trial judge found a lack of credibility and will not affirm on that basis." *Mathews v. Director of Revenue,* 8 S.W.3d 237, 238 (Mo. App.1999). Here, there was substantial evidence that was not controverted by any witness that warrants a finding of probable cause.

Brown admitted making an illegal left turn and that he did not immediately pull over when he saw Reid's flashing lights behind him. He admitted that he had bloodshot eyes and he did not dispute that he put his foot down on his left leg during the one-leg stand test. He testified at trial that he started the test, but did not feel comfortable, and "resituated" and "restarted" the test. Finally, nothing in the evidence contradicted Reid's testimony that there was a strong odor of intoxicants from Brown. Reid testified that he noticed a strong odor of intoxicants when he first approached Brown in his vehicle. He believed the smell was coming from Brown, but did not know that for a fact at that time. Reid later asked Brown to sit in Reid's patrol car, at which time Reid again noted a strong odor of intoxicants that was coming from Brown. All of this information was available to the police officer at the time of the arrest.

There was uncontroverted evidence from which Reid could determine probable cause to believe Brown was intoxicated. The standard of review applicable to this case does not permit this Court to affirm the judgment by disregarding all uncontroverted evidence that supports the director's determination that all elements for an administrative revocation of driving privileges were proven. *Tidwell v. Director of Revenue,* 931 S.W.2d 488, 491 (Mo.App.1996). The judgment was not supported by substantial evidence and, thus, was a misapplication of the law.

The judgment is reversed. The case is remanded with instructions that the trial court enter judgment affirming the revocation of driving privileges.

All concur.