Brian P. CALLANAN, Respondent,

v.

DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent.

No. ED 84911.

Missouri Court of Appeals, Eastern District, Division Three.

May 3, 2005.

Williams E. Roberts, Jefferson City, MO, for appellant.

William G. Buchholz, Clayton, MO, for respondent.

NANNETTE A. BAKER, Judge.

The Director of Revenue ("Director") revoked the license of Brian Callanan ("Driver") after he was pulled over for driving while intoxicated. Driver filed a Petition for Trial De Novo and his case was considered on May 25, 2004. The Commissioner recommended that Driver's driving privileges should not be revoked because the officer who arrested him did not have probable cause. The Commissioner determined that the police report was not credible or reliable due to inconsistencies of timing notations in the report. The Honorable Barbara Wallace adopted the findings and recommendations of the Commissioner as the judgment of the Court on June 15, 2004. The Director appeals.

*Background*

The Department of Revenue revoked Driver's license pursuant to Section 302.505.[1] On May 25, 2004, the Circuit Court took up the matter. The parties submitted the case solely on the Department of Revenue's records, which showed the following: On January 24, 2004, at approximately 2:05 a.m., Officer Gerald Watkins ("Officer Watkins") of the St. George Police Department observed a white Dodge pickup driving at an excessive rate of speed on a public street in St. George, Missouri. Officer Watkins watched as the vehicle weaved from side to side and straddled the lane divider markings, and at one point nearly left the road. Officer Watkins followed the vehicle for approximately one quarter of a mile after activating his police siren before the truck finally turned onto the shoulder and stopped.

Officer Watkins' narrative reports that the driver of the pickup identified himself as Brian P. Callanan. Officer Watkins noted that Driver's "eyes appeared glassy and watery, and his face was flushed, and he ... appeared intoxicated." Watkins also noted in his Alcohol Influence Report that Driver's speech was slurred and confused and that Driver swayed, wobbled and stumbled. Officer Watkins further recorded that Driver admitted that he "had a couple of beers" before driving. Officer Watkins administered four field sobriety tests.

According to Officer Watkins, during the Walk–and–Turn test, Driver failed to maintain a heel-to-toe stance, started before the instructions were completed, stopped to steady himself, failed to touch heel-to-toe, lost balance and stepped off the line, used his arms for balance, and failed to perform the correct number of steps. During the One Leg Stand test Driver swayed while balancing, used his arms to balance, hopped and ultimately could not do the test because he put his foot down three or more times. Driver

1. All statutory references are to RSMo.2004 unless otherwise indicated.

skipped several letters when Officer Watkins asked him to recite the alphabet.

Officer Watkins also administered the Horizontal Gaze Nystagmus test, and noted that Driver exhibited lack of smooth pursuit and distinct nystagmus at maximum deviation, with onset before 45 degrees. In addition, Officer Watkins administered a preliminary breath test which was positive for alcohol. Officer Watkins then advised Driver that he was under arrest for driving while intoxicated and weaving and lane straddling. He advised Driver of his rights and of the Missouri Implied Consent Law. Officer Watkins searched Driver, handcuffed him and placed him in the rear of the officer's car.

According to Officer Watkins' narrative, he again advised Driver of his rights and the Implied Consent Law upon their arrival at the St. George's Police Department. Driver agreed to take a breath test at 2:46 a.m. Officer Watkins conducted the test, which indicated that Driver had a blood alcohol concentration by weight ("BAC") of 0.130%. Officer Watkins issued two citations to driver, one for driving while intoxicated and the other for weaving and lane straddling. He also issued a Notice of Suspension/Revocation. Pursuant to Section 302.505, the Department of Revenue revoked Driver's license.

On March 31, 2004, Driver filed a Petition for Trial De Novo in the Circuit Court of St. Louis County. At trial, the Director of Revenue submitted Officer Watkins' Alcohol Influence Report, the checklist and printout from Driver's breath test, and the maintenance report for the instrument used to conduct the test. The Director also submitted Driver's driving record, showing that Driver had another alcohol-related contact with law enforcement during the five years prior to his arrest on January 24, 2004. Driver's counsel did not object, and the Court admitted the records.

Driver did not testify at the trial, and his counsel presented no testimony or evidence disputing that the events that Officer Watkins described in the records actually occurred or that the breath test was improperly administered. Driver's counsel took issue with the timing of events as recorded by Officer Watkins, asserting that Officer Watkins' timekeeping was inconsistent. Driver's counsel asserted that the records indicated that Officer Watkins stopped Driver at 2:05, arrested him at 2:06, interviewed him at 2:07 a.m., administered the Implied Consent warning at 2:46 a.m., and read Driver the *Miranda* warning at 2:56 a.m.

The Commissioner heard the case and issued her findings and recommendations on May 25, 2004. The Commissioner recommended reinstatement of the driving privileges of Driver after determining that the arresting officer did not have probable cause to arrest Petitioner for driving while intoxicated or an alcohol-related traffic offense because the police report was found not to be credible and/or reliable due to inconsistencies of the officer. The Honorable Barbara Wallace adopted the findings and recommendations of the Commissioner as the judgment of the Court on June 15, 2004. The Director timely appeals this ruling. The Director maintains that this ruling was against the weight of the evidence. The Director states that the ruling should be reversed because the Director made a prima facie case for revocation of driving privileges.

*Standard of Review*

■■■ "The decree or judgment of the trial court will be sustained by this court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously de-

clares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). While this court shall defer to the findings of the trial court where credibility of witnesses is involved, there is no need to do so where the disputed question is not a matter of direct contradictions by different witnesses. *Hopkins–Barken v. Director of Revenue*, 55 S.W.3d 882, 885 (Mo.App. E.D.2001). If the evidence is uncontroverted and the real issue is that of the legal effect of the evidence, there is no need to defer to the trial court's judgment. *Verdoorn v. Director of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003). Appellate courts do not give any deference to a trial judge's determination regarding the credibility of witnesses in cases submitted solely upon a written record. *Jarrell v. Director of Revenue*, 41 S.W.3d 42, 45 (Mo.App. S.D.2001). Our standard of review does not permit us to disregard uncontroverted evidence that support's Director's contention that all elements were proved. *Id.* This court may not affirm the judgment by disregarding all uncontroverted evidence that supports the Director's determination that all elements for an administrative revocation of driving privileges were proven. *Brown v. Director of Revenue*, 85 S.W.3d 1, 7 (Mo. banc 2002).

### Discussion

■ At the time of Callanan's arrest, Section 302.505.1 required suspension or revocation whenever a person is arrested upon probable cause to believe such a person was driving a motor vehicle while blood alcohol concentration in the person's blood, breath, or urine was .08% by weight. Under Section 302.535.1, the Director has the burden of proof to establish grounds for suspension or revocation. To make a *prima facie* case for suspension or revocation under Section 302.505–535, the Director must establish by a preponder-

ance of the evidence that: (1) the driver was arrested upon *probable cause* for driving while intoxicated or for violating an alcohol-related offense; and (2) that the driver was driving with a blood alcohol concentration of at least .08% by weight. *Verdoorn*, 119 S.W.3d at 545. In this case, the only issue is whether Officer Watkins had probable cause to arrest Driver.

■ The probable cause required for the suspension or revocation of a driver's license is the level of probable cause necessary to arrest a driver for an alcohol-related violation. *Brown v. Director of Revenue*, 85 S.W.3d at 4. That level of probable cause will exist when a police officer observes an unusual or illegal operation of a motor vehicle and observes indicia of intoxication upon coming in contact with the motorist. *Id.* Probable cause, for the purposes of Section 302.505, will exist when the surrounding facts and circumstances demonstrate to the senses of a reasonably prudent person that a particular offense has been or is being committed. *Id.*

■■ The level of proof necessary to show probable cause under Section 302.505 is substantially less than that required to establish guilt beyond a reasonable doubt. *Id.* There is a "vast gulf" between the quantum of information necessary to establish probable cause and the quantum of evidence required to prove guilt beyond a reasonable doubt. *Id.* The trial court must assess the facts by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer. *Id.*

In two analogous cases, this court has found facts were sufficient to create reasonable grounds and probable cause to believe the driver was intoxicated. In one case, the police officer pulled the driver over after observing her vehicle weaving on the highway and leaving the roadway.

*Soest v. Director of Revenue,* 62 S.W.3d 619, 621 (Mo.App. E.D.2001). When the officer stopped the driver, the officer noticed that the driver had watery eyes. *Id.* at 620. The driver also admitted to drinking a beer several hours earlier. *Id.* at 621. The officer administered the horizontal gaze nystagmus test, which showed impairment. *Id.* at 620. This court held that these facts constituted reasonable grounds to believe that the driver was intoxicated. *Id.* at 621.

This court also found probable cause in another similar case. *Thurman v. Director of Revenue,* 745 S.W.2d 260 (Mo. App. E.D.1988). In that case, the police officer stopped Thurman after he observed his vehicle weaving on the road. *Id.* at 262. Thurman's eyes were bloodshot and his speech was slurred. *Id.* Thurman was unable to satisfactorily complete several field sobriety tests. *Id.* This court held that these facts were sufficient to show probable cause, and that "a finding of no probable cause based upon the evidence before the court would have been erroneous." *Id.*

██ In the case at hand, the court found the officer could not have had probable cause to arrest Driver. However, Officer Watkins indicated in his report that he observed Driver traveling at an excessive rate of speed, weaving, straddling the dividing line, nearly leaving the roadway, and continuing on even after Officer Watkins activated his emergency equipment. Once Officer Watkins stopped the vehicle and identified Callanan as the driver, Watkins noted that he exhibited slurred speech; confusion; watery, bloodshot, and glassy eyes; and a swaying, stumbling and wobbling gait. Driver admitted before being arrested that he had consumed a couple of beers that evening. Officer Watkins also noted that Driver was unable to fully and satisfactorily perform any of the field

sobriety tests as instructed, and that a portable breath test indicated the presence of alcohol.

██ Driver maintains, however, that timing notations in the alcohol influence report rebut the argument of the Director and negate probable cause. If the director presents evidence to establish the elements of the *prima facie* case, a presumption arises that the driver was intoxicated. *Verdoorn,* 119 S.W.3d at 546. The driver must present "some evidence" that the driver's blood alcohol level did not exceed the legal limit. *Id.* Merely pointing out inconsistencies in the Director or Revenue's case is not sufficient. *Id.* Director's establishment of a prima facie case shifts the burden of production onto the driver to adduce evidence that his blood alcohol level did not exceed the legal limit. *Id.*

Driver argues that the alcohol influence report states that the time of initial contact was 2:05 a.m. and the time of arrest was 2:06 a.m. He maintains that the officer could not have gained probable cause in the one minute from contacting Driver to arresting him. However, a careful look at the alcohol influence report reveals a different interpretation of the time notations. The report indicates that 2:05 a.m. was the "time of initial contact." The 2:06 a.m. notation is in the box titled "arrest/stop." The "interview start time" at 2:07 a.m. At 2:56 a.m. Driver was advised that he was under arrest and informed of his rights.

It is clear that Officer Watkins did not arrest Driver at 2:07 a.m., but that at 2:07 a.m. he pulled Driver over to conduct a stop. He then began to interview Driver. All of this occurred before Driver was advised that he was being arrested. Officer Watkins' narrative also indicates that this was the sequence of events. The interpretation of the time sequence urged by Driver, that Officer Watkins arrested Driver one minute after first observing him, is not supported by the evidence.

■ Even if this time sequence is inconsistent, we cannot hold that Officer Watkins did not have probable cause. Mere inaccuracy in timekeeping cannot rebut the Director's *prima facie* case. Officer Watkins' account of the actual events of the morning in question is uncontradicted. Erratic driving, slurred speech, unsteady gait, and poor performance on the field sobriety tests, coupled with his admission of drinking gave Officer Watkins probable cause to support Driver's arrest. Driver's assertions regarding mere inconsistencies in Officer Watkins' timekeeping do not meet the standard that the Supreme Court reaffirmed in *Verdoorn* for rebuttal of the Director's *prima facie* case.

We find that Officer Watkins had probable cause to arrest Driver for driving while intoxicated and the trial court erred as a matter of law when it ruled otherwise. Accordingly, we reverse the trial court's judgment and remand to the trial court to enter judgment reinstating the revocation of petitioner's license.

CLIFFORD H. AHRENS, P.J., and GLENN A. NORTON, J., concur.