David W. PRUESSNER, Respondent,

v.

**DIRECTOR OF REVENUE, State of Missouri, Appellant.**

No. ED 91249.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 16, 2008.

Jeremiah W. (Jay) Nixon, Attorney General, Charles L. Clark, Assistant Attorney General, Jefferson City, MO, for Appellant.

David W. Pruessner, Pro se, Glendale, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

### Introduction

The Director of Revenue (Director) appeals from the trial court's judgment, following a bench trial in which the trial court reinstated the driving privileges of David Pruessner (Petitioner), after the Director suspended Petitioner's driving privileges pursuant to Sections 302.505 and 302.525, RSMo (2000).[1] The trial court found that the Director's evidence failed to show that the arresting officer had probable cause to arrest Petitioner for driving while intoxicated and that Petitioner had a blood alcohol concentration (BAC) of .08% or more by weight. We reverse and remand with directions.

### Background

Shortly before 1 a.m. on September 6, 2007, Officer Chris Moore (Officer Moore) observed Petitioner's vehicle drive onto the white dotted line separating lanes while traveling eastbound on Interstate 64. Office Moore observed the vehicle weave from side to side as it approached Maryville Centre Drive. The vehicle's speed fluctuated from 65 to 58 miles per hour in a 60–miles–per–hour zone. Approaching Mason Road and again after crossing Interstate 270, the vehicle twice more touched and crossed the white dotted line. Officer Moore stopped the vehicle east of Ballas Road.

Officer Moore approached the vehicle and noticed a wheelchair in the rear. Officer Moore further noted that the vehicle was equipped with hand controls for braking and acceleration. Officer Moore questioned the driver, Petitioner, as to the

---

1. All further statutory references are to RSMo (2000), unless otherwise indicated.

reason for his weaving in the road. Petitioner responded that he dropped his cell phone, though when asked by the officer, Petitioner admitted to drinking.[2] Officer Moore detected a moderate odor of alcohol and observed Petitioner's eyes to be watery and glassy. Officer Moore administered the horizontal gaze nystagmus (HGN) test to Petitioner,[3] but did not administer the walk-and-turn test or the one-leg-stand test because Petitioner is paraplegic. When first asked to recite the alphabet from A–P, Petitioner failed to stop at "P" and continued to "Z," however on his second attempt Petitioner did stop at "P." When asked to repeat the entire alphabet, Officer Moore noted that Petitioner jumbled and mumbled a few letters. Petitioner also tested positive for alcohol on a preliminary breath test. Officer Moore placed Petitioner under arrest for driving while intoxicated (DWI), at which time Petitioner was able to get out of his vehicle, into his wheelchair, and wheel himself to the patrol car where Officer Moore assisted him into the back seat. Once at the police station, Petitioner was informed of the Missouri Implied Consent Law. Petitioner consented to a breath test, which revealed a BAC of .105%. Petitioner was issued citations for DWI and improper lane use.

The Director revoked Petitioner's driving privilege, pursuant to Sections 302.505 and 302.525. Petitioner then filed a petition for trial de novo in the Circuit Court of St. Louis County. A trial was held on March 12, 2008, during which the trial court admitted into evidence Exhibits A and B containing the notice of suspension/revocation of Petitioner's driving privilege, Petitioner's Missouri Driver Record, the Alcohol Influence Report completed by Officer Moore on the date of Petitioner's arrest, Petitioner's citations for DWI and improper lane use, Officer Moore's narrative, the breath test results, and breath test device maintenance documents, including Officer Moore's permit to use the breath test machine, the breath test maintenance report, the Certificate of Analysis from the manufacturer and supplier of the breath test machine, and diagnostic tests of the breath test machine. Petitioner did not present rebuttal evidence but argued the evidence was not sufficient to find probable cause to arrest him because: (1) there were no observations made regarding the walk-and-turn or one-leg-stand tests because Petitioner was confined to a wheelchair; (2) the record did not indicate at what time the breath test was given, thus there was no 15–minute observation period; (3) the moderate odor of alcohol and watery, glassy eyes do not tend to show someone is intoxicated at 1 a.m.; (4) the weight given to the alphabet test should be minimal at best; and (5) more was needed for an officer to surmise that Petitioner was driving while intoxicated.

The Circuit Court reversed Petitioner's driver's license revocation, finding Officer Moore did not have probable cause to arrest Petitioner for driving while intoxicated and that Petitioner did not have a BAC of .08% or more. Director appeals.[4]

---

2. The Alcohol Influence Report indicates that when Petitioner was later interviewed he admitted to drinking beer at Harpo's from 7 p.m. until 11 p.m., though he did not know the number of beverages he consumed.

3. Officer Moore is certified in field sobriety and has eight hours of training in HGN.

4. Petitioner did not file a brief in this matter. "While there is no penalty for that omission, it requires this court to adjudicate an appellant's claims of error without the benefit of whatever argument, if any, the respondent could have made in response." *White v. Dir. of Revenue,* 255 S.W.3d 571, 576 n. 4 (Mo. App. S.D.2008) (internal quotations omitted).

### Point on Appeal

Director alleges the trial court erred in reversing the revocation of Petitioner's driver's license because the Director established a prima facie case pursuant to Section 302.505, which Petitioner failed to rebut, in that Petitioner was arrested on probable cause to believe he was driving while intoxicated and that he had been driving when his BAC was at least .08% by weight.

### Standard of Review

The trial court's judgment reinstating Petitioner's driving privileges shall be "affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Vanderpool v. Dir. of Revenue*, 226 S.W.3d 108, 109 (Mo. banc 2007); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). However, we need not defer to the trial court's judgment if, as here, "the evidence is uncontroverted or admitted so that the real issue is a legal one as to the legal effect of the evidence." *Verdoorn v. Dir. of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003).

### Discussion

 In order to establish a prima facie case for suspension of a driver's license for driving while intoxicated, under Section 302.505, the Director must present evidence at trial showing "(1) probable cause for the arrest and that (2) the driver's blood alcohol level exceeded the legal limit." *Vanderpool*, 226 S.W.3d at 109 (internal quotations omitted). The burden of proof is on the Director "to establish grounds for the suspension or revocation by a preponderance of the evidence." *Verdoorn*, 119 S.W.3d at 545.

### I. Probable Cause

 "The probable cause required for the suspension or revocation of a driver's license is the level of probable cause necessary to arrest a driver for an alcohol-related violation." *Brown v. Dir. of Revenue*, 85 S.W.3d 1, 4 (Mo. banc 2002). Probable cause will exist "when the surrounding facts and circumstances demonstrate to the senses of a reasonably prudent person that a particular offense has been or is being committed." *Id.* This level of proof "is substantially less than that required to establish guilt beyond a reasonable doubt." *Id.* In determining whether probable cause existed at the time of arrest, the trial court assesses the facts "by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer." *Id.* This is an objective standard. *Guhr v. Dir. of Revenue*, 228 S.W.3d 581, 585 (Mo. banc 2007).

The Missouri Supreme Court has found that probable cause necessary to arrest a driver for an alcohol related violation will exist "when a police officer observes an unusual or illegal operation of a motor vehicle and observes indicia of intoxication upon coming into contact with the motorist." *Brown*, 85 S.W.3d at 4. In the present case, the evidence presented showed that Officer Moore observed "unusual or illegal operation of a motor vehicle," in that Petitioner weaved side to side in a lane, drove onto and crossed the white dotted line between lanes, and fluctuated speed. The evidence further showed that after stopping the vehicle, Officer Moore observed "indicia of intoxication," in that he observed an odor of alcohol and Petitioner's watery, glassy eyes. Petitioner admitted to drinking alcohol, failed the HGN test, and tested positive for alcohol in his preliminary breath test,[5] all further evidence of an "indicia of intoxication."

---

**5.** Section 577.021.3 provides that "[a] [chemi- cal] test administered pursuant to this section

While Petitioner does not make any arguments on appeal, he argued at trial that the lack of observations regarding the walk-and-turn test or the one-leg-stand test precluded a finding of probable cause. We disagree. As many cases have shown, field sobriety tests are not mandatory and probable cause can exist even without those particular field tests. *See Soest v. Dir. of Revenue*, 62 S.W.3d 619, 621 (Mo. App. E.D.2001) ("Even if the tests requiring walking and standing are disregarded, the [failed] nystagmus test ... provided further grounds for the officer's reasonable belief."); *Hawkins v. Dir. of Revenue*, 7 S.W.3d 549, 552 (Mo.App. E.D.1999) ("[T]he weight of the evidence shows the officer had reasonable grounds to believe Driver was driving while intoxicated, even though no field sobriety tests were conducted due to Driver's refusal.... [T]he officer's observations and Driver's own statements provided reasonable grounds to support the officer's belief that Driver had been driving while intoxicated."); *Chancellor v. Lohman*, 984 S.W.2d 857, 858 (Mo. App. W.D.1998) (holding field sobriety tests "are not mandatory," as they "merely are an aide to an officer's other observations in determining whether he has probable cause for an arrest."). Even without the walk-and-turn and one-leg-stand tests, sufficient facts and circumstances exist that would warrant "a prudent, cautious, and trained police officer" to believe Petitioner had committed the offence of driving while intoxicated. *See Brown*, 85 S.W.3d at 4.

The Director presented uncontroverted evidence from which Officer Moore reasonably could determine probable cause to arrest Petitioner for DWI. The trial court

erred in finding that Officer Moore had no probable cause to arrest Petitioner for driving while intoxicated as the record is absolutely void of any evidence to support the trial court's finding.

## II. Blood Alcohol Concentration

■■■ In addition to proving probable cause for arrest, the Director also must also show Petitioner's BAC exceeded the legal limit of .08% by weight, in order to establish a prima facie case. To show Petitioner's BAC was excessive, the Director may introduce evidence of a breath test. *Coyle v. Dir. of Revenue*, 181 S.W.3d 62, 64 (Mo. banc 2006). Here, the Director presented evidence at trial establishing Petitioner's BAC was .105%, which is well above the .08% legal limit.

■■■ To establish a foundation for admitting blood alcohol test results, the Director "must establish that the test was performed: (1) following approved techniques and methods of the division of health, (2) by an operator holding valid permit, (3) on equipment and devices approved by the division." *Vanderpool*, 226 S.W.3d at 110. Evidence was presented at trial satisfying these criteria. Petitioner failed to present any rebuttal evidence.

### A. Approved Techniques and Methods Were Followed.

The approved techniques and methods for administering a blood alcohol test are set forth in the Missouri Code of State Regulations, Title 19, Section 25–30.060 (2008), and contained in the Alcohol Influence Report completed by Officer Moore the morning of Petitioner's arrest.[6] Ex-

---

shall be admissible as evidence of probable cause to arrest and as exculpatory evidence."

**6.** Missouri Code of State Regulations, Title 19, Section 25–30.060(3) (2008) applies to the

BAC Data Master, the breath test used in Petitioner's case, and states "When using Data Master, the procedures on the following form shall be performed and the form shall be completed (see form # 7)." Form 7, which

hibits A and B, presented at trial by the Director, demonstrate these standard procedures were followed.

Among the approved techniques and methods for administering a blood alcohol test are the requirements that the test administrator observe the test subject for 15 minutes prior to the administration of the test, that no smoking or oral intake of any material occur during the observation period, and that if vomiting occurs during the observation period, the 15–minute observation period must begin again. Mo. Code Regs. Ann. Tit. 19, § 25–30.060 (2008); see Vanderpool, 226 S.W.3d at 110. Although Petitioner presented no evidence at trial, he argued that the record did not indicate at what time the breath test was given, and therefore there was no 15–minute observation period and the breath test is invalid. We disagree for several reasons.

First, the record shows that Officer Moore specifically indicated on the Alcohol Influence Report that Petitioner was observed, for purposes of the 15–minute observation period, from 1:23 to 1:42 a.m. While Petitioner is correct that the Alcohol Influence Report does not contain the time the breath test was given, the printout from the BAC Data Master machine used to test Petitioner's breath for alcohol indicates the test was given at 1:42 a.m. This is sufficient evidence to indicate the proper procedure was followed regarding the 15–minute observation period. No evidence was presented that the breath test was not given at 1:42 a.m.

Second, even assuming Petitioner was correct in his argument at trial and the 15–minute observation period did not take place, this failure does not render the blood alcohol test inadmissible. Vanderpool, 226 S.W.3d at 110. The Missouri Supreme Court has held that "[i]n addition to the lack of continuous observation, the driver must also present some evidence that he or she smoked, vomited or orally ingested some other materials during the 15 minute period, or present evidence showing, by expert testimony or otherwise, that the driver did something or was subject to some factor other than smoke, oral intake of any material, or vomiting that affects the validity of the blood alcohol results." Id. (internal quotations omitted). "The lack of observation, without more, does not provide a basis to question the validity of the blood alcohol test results." Id. Petitioner presented no evidence of such actions. We find approved methods and techniques were followed.

### B. Officer Moore Held Valid Permit.

In order to establish a foundation for admitting the blood alcohol test results, the Director must next prove the officer performing the test held a valid permit. The Director presented at trial, as part of Exhibit A, Officer Moore's Type II permit authorizing him to use the Data Master device. Officer Moore's permit was valid from December 1, 2005, through December 1, 2007, thus was valid at Petitioner's arrest. Petitioner failed to rebut this evi-

---

the Alcohol Influence Report mirrors, requires the operator of the machine to check boxes for the following procedures: (1) "Subject observed for at least 15 minutes by _____. No smoking or oral intake of any material during this time; if vomiting occurs, start over with the 15 minute observation period," (2) "Assure that the power switch is ON," (3) "Press RUN button," (4) "When

display requests INSERT TICKET, insert evidence ticket," (5) "Enter subject and officer information," (6) "When display reads PLEASE BLOW and gives audible beep, take subject's breath sample," (7) "When printer has completed printing out test result, remove ticket from printer. Attach printout to this report."

dence at trial, thus we find the Director met its burden on this element.

### C. Equipment and Device Was Approved by the Department of Health.

Finally, the Director must prove that the equipment and device used to test Petitioner's BAC was approved by the Department of Health. The Director presented Exhibit B at trial to prove this requirement. Exhibit B contained a Data Master Maintenance Report filed with the Missouri Department of Health, maintenance test, diagnostic check test, printer test, and a Certificate of Analysis from the manufacturer and supplier of the device. Again, Petitioner failed to present any rebuttal evidence on this point. We find this evidence sufficient to establish that the equipment and device used was approved by the Department of Health.

There is no dispute in this case that the Director presented a prima facie case at trial. In a trial de novo, once the Director makes a prima facie case of probable cause of driving while intoxicated, "the driver is entitled to present rebuttal evidence that raises a genuine issue of fact regarding the validity of the blood alcohol test results." *Verdoorn*, 119 S.W.3d at 546. This "rebuttal evidence should challenge the presumption of validity established by the [D]irector's prima facie case; but the driver's burden is one of production—not persuasion." *Id.* Here Petitioner failed to produce any rebuttal evidence. Petitioner did not challenge the validity of the Director's prima facie case. Petitioner presented no evidence that probable cause was lacking to arrest him for driving while intoxicated and failed to present evidence that his BAC was in fact below the legal limit.

The Director met its burden of proving that Office Moore had probable cause to arrest Petitioner for driving while intoxi-

cated and that Petitioner had been driving with a BAC above .08% by weight. The record contains no substantial evidence to support the trial court's judgment that the Director failed to present evidence establishing the required elements of its prima facie case, and thus was a misapplication of the law. The trial court made no finding that Officer Moore's testimony was not credible, and we may not affirm on the presumption that it did so. While a trial court is within its authority to disbelieve evidence, even if uncontradicted, it does not have the right to disregard uncontroverted competent evidence without an express finding of incredibility. *Brown*, 85 S.W.3d. at 7. Our standard of review does not permit us to affirm the judgment of the trial court by "disregarding all uncontroverted evidence that supports the [D]irector's determination that all elements for an administrative revocation of driving privileges were proven." *Id.*

### Conclusion

The trial court erred in entering judgment reinstating the driving privileges of Petitioner. The judgment of the trial court is reversed. The case is remanded with directions to enter a judgment reinstating the suspension of Petitioner's driving privileges.

GLENN A. NORTON, and PATRICIA L. COHEN, JJ., concur.