**Riley Calvin HARPER, Petitioner–Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent–Respondent.**

**No. SD 29180.**

Missouri Court of Appeals, Southern District, Division Two.

April 1, 2009.

252

Justin H. Nelson, Garrett & Silvey, West Plains, Missouri, for Appellant.

Chris Koster, Attorney General, and Jeremiah J. Morgan, Deputy Solicitor General, Jefferson City, Missouri, for Respondent.

GARY W. LYNCH, Chief Judge.

Following an administrative suspension of his driving privileges for driving with excessive blood alcohol content, Riley Calvin Harper ("Petitioner") petitioned for judicial review in the Circuit Court of Howell County. The circuit court affirmed the suspension, and Petitioner timely appealed. This Court affirms the trial court's judgment.

## *Factual and Procedural Background*

At trial, the parties stipulated that the case be submitted on the record, which consisted of properly-certified records from the Department of Revenue, pursuant to section 302.312, RSMo 2000. No other evidence was presented to the trial court.

The arresting officer's narrative report and probable cause statement were included as part of the record before the circuit court, in accordance with section 302.510, RSMo Cum.Supp. 2005. These documents established that on October 14, 2007, sheriff's deputy Torrey Thompson ("Deputy Thompson") was dispatched to County Road 6970 in Howell County after it was reported that a male subject was "passed out" in a blue Toyota pickup truck. When Deputy Thompson arrived at 8:17 a.m., he noted that the truck's engine was running, and its headlights and taillights were on. The truck was headed south and parked at an angle in the roadway. Petitioner was passed out sitting in the passenger's seat.

As Deputy Thompson approached, Petitioner did not acknowledge his presence. Thompson opened the driver's-side door and turned off the engine. Thompson spoke to Petitioner, but he received no response. When he announced, "Sheriff's office, wake up[,]" Petitioner only slightly stirred. After another minute or two of Deputy Thompson continuing to announce his presence, Petitioner became aware of the deputy's presence.

After Petitioner "came to," Deputy Thompson observed signs of intoxication: "an overwhelming odor of intoxicants" from the vehicle's interior; "extremely bloodshot, glassy, watery eyes"; slurred speech; and slow reactions. Petitioner dropped his license when Thompson asked him to produce it and continued to search the seat for it after Thompson picked it up and was inspecting it. Upon questioning, Petitioner stated he did not know why he was parked in the middle of the road. Petitioner said that he had been watching a football game at a friend's house, and later he went to play poker. He claimed that someone named John had been driving and that John had walked away from the vehicle toward a house nearby. Deputy Thompson observed, however, that "[t]he area in which I encountered Harper was on a County road. I noticed that when walking to his vehicle from my patrol vehicle that I left distinct foot prints [sic] on the surface of the county road. I noticed no footprints near the vehicle on either side of the vehicle."

Deputy Thompson asked Petitioner again who had been with him. Petitioner hesitated and told Thompson he did not want "to rat no one out[,]" because the driver would be in trouble for leaving the truck on a county road. Petitioner then named Bruce Sexton as the driver, but he did not know where Sexton went and did not know how long he had been there. Petitioner claimed he did not know Sexton very well and did not know his address or phone number. Petitioner stated that Sexton would not admit to driving because he would be afraid of getting into trouble. When Deputy Thompson told Petitioner that he was having trouble believing his story, Petitioner stated, "I know you think I'm lying, and it kind of looks that way."

Deputy Thompson administered field sobriety tests. On the horizontal gaze nystagmus test, the deputy "observed all six clues of impairment ... including very distinct vertical nystagmus." In performing the one-legged stand, Petitioner swayed while balancing, used his arms for balance, and counted only to 9 within thirty seconds. When asked to recite the alphabet, Petitioner, who had graduated high school and attended college, stopped at "s" and asked to start over. On his

second attempt, he recited the alphabet correctly, although Deputy Thompson noted he would pause for a moment before being able to recite the next letter or letters. Deputy Thompson determined that there was "probable cause" to believe that Petitioner had operated a motor vehicle while in an intoxicated condition, and Petitioner was arrested and transported to the sheriff's office.

Within the "Interview" section of the Alcohol Influence Report, an arresting officer can record the responses given by the arrestee. Here, Deputy Thompson indicated that Petitioner admitted drinking, but he denied operating the vehicle. In response to the question, "What were you doing during the last three hours?" Deputy Thompson's report states: "Sleeping/really don't remember." The report further indicates that Petitioner was at a buddy's house drinking "Seagram's and Seven" and that he started drinking at 7:00 p.m. and stopped drinking at 2:00 a.m. In response to how much he had to drink, the report indicated "No clue 5 or 6," but Petitioner denied that he was under the influence of an alcoholic beverage.

After Petitioner was advised of his *Miranda*[1] rights and informed of the implied consent law, he submitted to a breath test, administered at 9:13 a.m., which indicated a blood alcohol content level of .222. Deputy Thompson served Petitioner with a notice of suspension of his driving privileges under section 302.505, RSMo Supp. 2001. Subsequently, Petitioner requested an administrative hearing on the suspension, pursuant to section 302.530.1, RSMo Cum.Supp. 2005, which was held December 6, 2007. On December 19, 2007, the administrative suspension of Petitioner's driving privileges was sustained, after which Petitioner petitioned for a trial *de novo* in the Circuit Court of Howell County. Section 302.535.1, RSMo Cum.Supp. 2002. After a trial, the trial court affirmed the administrative suspension of Petitioner's driving privileges, and Petitioner now appeals.

### Standard of Review

Upon review of a driver's license suspension, this court will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Guhr v. Dir. of Revenue*, 228 S.W.3d 581, 586 (Mo. banc 2007). "We view the evidence and the reasonable inferences drawn therefrom in the light most favorable to the judgment." *Kisker v. Dir. of Revenue*, 147 S.W.3d 875, 876 (Mo.App.2004) (citing *Terry v. Dir. of Revenue*, 14 S.W.3d 722, 724 (Mo.App.2000)). Where the facts are contested, we "must defer to the trial court's determination regarding those facts." *Guhr*, 228 S.W.3d at 586. If "the facts are not contested, then the issue is legal and there is no finding of fact to defer to." *Id.*

### Discussion

### Deficient Statement of Facts

Appellant's statement of facts consists of the following, *in toto:*

On October 14, 2007, at approximately 8:17 a.m. a Howell County Sheriff's Department Deputy located a vehicle on a county road parked on the side of the road. [L.F. 21]. The officer found the Appellant asleep in the passenger seat of the vehicle. *Id.* The officer performed a series of field sobriety tests and administered a breath test. [L.F. 23]. The results indicated the appellant was intoxicated at the time of *arrest. Id.* The officer did not observe the Ap-

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

pellant operating the vehicle. The vehicle was not in motion when the officer came upon the vehicle parked on the side of the road. There was no testimony from any third party witnesses who observed the Appellant driving the vehicle. There was no testimony from the officer or any third party witness tying the Appellant's intoxication to the operation of the motor vehicle.

On December 19, 2007, a decision was rendered by the Department of Revenue suspending the Appellant's driving privileges. [L.F. 6] On December 21, 2007, the Appellant did timely file a Petition for Judicial Review of the Administrative Suspension. [L.F. 5].

On April 24, 2008, a hearing was conducted on the Appellant's Petition and on April 30, 2008, the Court entered Judgment affirmed the Director's decision to suspend the Appellant's driving privileges. [L.F. 33].

■ Rule 84.04(c) provides that the statement of facts "shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument."[2] "The primary purpose of the statement of facts is 'to afford an immediate, accurate, complete and unbiased understanding of the facts of the case.'" *State ex rel. Mo. Highway and Transp. Comm'n v. Pipkin*, 818 S.W.2d 688, 690 (Mo.App.1991) (quoting *Wipfler v. Basler*, 250 S.W.2d 982, 984 (Mo.1952)). "[T]he appellant must define the scope of the controversy by stating the relevant facts fairly and concisely." *Id.*

As in *Rushing v. City of Springfield*, 180 S.W.3d 538, 540 (Mo.App.2006) (quoting *Kleinhammer v. Kleinhammer*, 225 S.W.2d 377, 378 (Mo.App.1949)), "'a mere reading of the statement of facts in [Appellant's] brief discloses that [Appellant has]

ignored the evidence presented on behalf of [Respondent].'" A statement of facts "which omits the essential facts on which an appellant's adversary relies cannot be deemed a substantial compliance with said rule ... [and] gives us no intelligent understanding of the facts of the case."

■ "Candor, accuracy and fairness are indispensable in a proper statement of facts." *S.R. v. S.M.R.*, 709 S.W.2d 910, 912 (Mo.App.1986). "It is substantially impossible to place too much emphasis upon the statement of facts in the brief." *Thompson v. Thompson*, 786 S.W.2d 891, 892 (Mo.App.1990) (quoting Supreme Court Judge Roscoe P. Conkling, *The Appellate Court Brief Should:*, 10 J.Mo.BAR 161, 164 (1954)). "'The facts of the case give rise to the law which must be declared and usually determine the decision of the court for or against the client.'" *Id.* "'No lawyer can afford to fail to master the facts.'" *Id.* "'And accuracy in fact statement is imperative[.]'" *Id.* As noted in *S.R.*, 709 S.W.2d at 912, "[c]ounsel would be well advised to review *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978); *Federbush v. Federbush*, 667 S.W.2d 457 (Mo.App.1984); and *Dunavant v. Dunavant*, 670 S.W.2d 524 (Mo.App.1984)."

While we do not expect perfection, we do expect reasonable compliance with the briefing rules. *Thompson*, 786 S.W.2d at 892. Here, Petitioner in his statement of facts mischaracterized and omitted substantial material facts that were before the trial court and which, when viewed in the light most favorable to the trial court's decision, support the judgment. First, Petitioner asserts in his statement of facts that his vehicle was found located on the side of the road, when the only evidence in the record is that his vehicle was located at an angle in the middle of the road. Sec-

**2.** All references to rules are to Missouri Court Rules (2008).

ond, Petitioner omitted from his statement of facts that at the time Deputy Thompson approached Petitioner's vehicle, the motor was running and the lights were on. Third, Petitioner characterizes his condition at the time the deputy found him as being "asleep," when the reasonable inference from the evidence before the trial court is that he was, as characterized by Deputy Thompson in the record, "passed out." Fourth, Petitioner omitted in his statement of facts the inconsistent statements he gave to Deputy Thompson and all the facts in the record, such as the lack of footprints around the vehicle, which contradicted such statements. Fifth, most of Petitioner's statement of facts is a recital of evidence which Petitioner claims was *not* presented to the trial court. The only purpose served by such a recital in a statement of facts, which should be confined to the evidence actually before the trial court, is to argue the case, and argument has no place in a statement of facts. "Such a one-sided, argumentative statement of facts would justify dismissal for violation of Rule 84.04(c)." *In Interest of S.M.*, 750 S.W.2d 650, 652 (Mo.App.1988). In our discretion, however, based upon the limited size of the record in this case and our desire to reach the merits of the case, we decline to impose that sanction. Future appellants and the bar, however, would be remiss in taking any solace in the exercise of our discretion in this case. Our primary purpose in reaching the merits here is to demonstrate how an appellant's failure to give a fair and concise statement of facts, as required by Rule 84.04(c), can blind an appellant from seeing that the appellant's points, when viewed in the light of a fair and concise statement of facts, have no merit.

### Probable Cause to Arrest

■ In reliance upon his deficient statement of facts, Petitioner presents two interrelated claims of error on appeal asserting that Deputy Thompson did not have probable cause to arrest him as required by section 302.505; the first point contending that "there was *no evidence* that [Petitioner] was intoxicated at the time of any operation of the motor vehicle," and the second point contending that "there was *no evidence* that [Petitioner] was operating a motor vehicle." (Emphasis added). Petitioner admits that he was intoxicated at the time of his arrest at 8:48 a.m. and does not dispute that Deputy Thompson had probable cause to believe that Petitioner was intoxicated when the deputy first found him passed out in the vehicle at 8:17 a.m., but, rather, Petitioner claims that there was no evidence that he was operating a vehicle at that time or any other time while he was so intoxicated. This court disagrees.

Section 302.505 provides that "[t]he department shall suspend or revoke the license of any person upon its *determination* that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight[.]" Section 302.505.1, RSMo Supp.2001. Chapter 302 does not provide a definition of the term "driving," however, section 577.001.1 defines it as "physically driving or operating a motor vehicle." *Cox v. Dir. of Revenue*, 98 S.W.3d 548, 550 (Mo. banc 2003) (*White, J., dissenting in separate opinion with Wolff and Teitelman, JJ., concurring; Wolff J., dissenting in separate opinion filed*). Neither "driving" nor "operating" are further defined in chapters 302 or 577. *Id.* "Absent a definition in the statute, the plain and ordinary meaning is derived from the dictionary." *Id.* "The dictionary defines *drive* as 'to guide a vehicle along or through.' WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 692 (1993)." *Id.* "Oper-

ate" is defined as " 'to cause to function usually by direct personal effort: work (a car).' " *Id.*

 Section 302.530.4, RSMo Cum. Supp. 2005, provides, in part: "The sole issue at the hearing shall be whether by a preponderance of the evidence the person was driving a vehicle pursuant to the circumstances set out in section 302.505." "Proof that the person was driving or operating the vehicle, therefore, is essential, but such may be established by circumstantial evidence." *Smith v. Dir. of Revenue,* 77 S.W.3d 120, 123 (Mo.App.2002). The determination of whether there is probable cause to arrest is based on the information known to the officer prior to the arrest. *York v. Dir. of Revenue,* 186 S.W.3d 267, 270 (Mo. banc 2006). "[T]here is no requirement that the arresting officer or another witness actually observe the subject driving[.]" *Neer v. Dept. of Revenue,* 204 S.W.3d 315, 323 (Mo.App.2006). Rather, an officer may rely upon circumstantial evidence. *Id.* "Circumstantial evidence means evidence that does not directly prove a fact in issue but gives rise to a logical inference that the fact exists." *Heskett v. Dir. of Revenue,* 62 S.W.3d 103, 106 (Mo.App.2001).

 To establish a prima facie case for the suspension of driving privileges under section 302.505.1, "the Director must present evidence demonstrating: '(1) probable cause for the arrest and (2) the driver's blood alcohol level exceeded the legal limit.' " *White v. Dir. of Revenue,* 227 S.W.3d 532, 534 (Mo.App.2007) (quoting *Coyle v. Dir. of Revenue,* 181 S.W.3d 62, 64 (Mo. banc 2005)). The second element is not at issue here. "Probable cause, for the purposes of section 302.505, will exist 'when the surrounding facts and circumstances demonstrate to the senses of a reasonably prudent person that a particular offense has been or is being committed.' " *Brown v. Dir. of Revenue,* 85 S.W.3d 1, 4 (Mo. banc 2002) (quoting *Smyth v. Dir. of Revenue,* 57 S.W.3d 927, 930 (Mo.App.2001)). "The level of proof necessary to show probable cause under section 302.505 'is substantially less than that required to establish guilt beyond a reasonable doubt.' " *Brown,* 85 S.W.3d at 4. "The trial court must assess the facts by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer." *Id.* "The standard for determining probable cause is the probability of criminal activity rather than a prima facie showing of guilt." *Rain v. Dir. of Revenue,* 46 S.W.3d 584, 588 (Mo.App. 2001). "While mere suspicion is not enough to establish reasonable grounds, absolute certainty is not required." *Id.* "The practical considerations of everyday life on which reasonable people act govern the probable cause determination." *Id.*

Here, the trial court found there was sufficient evidence to establish that the arresting officer had probable cause to believe that Petitioner was operating a vehicle while intoxicated, "notwithstanding he was on the passenger side of the vehicle" at the time the deputy first encountered him. The sheriff's office was notified that there was a person passed out inside a blue Toyota pickup truck on a county road. When Deputy Thompson arrived on the scene, he found such a truck parked at an angle in the middle of the county road with its engine running and lights on. Petitioner was discovered in the vehicle unconscious, obviously intoxicated, and alone, *albeit* in the passenger's seat. The deputy observed no visible footprints anywhere around the vehicle other than his own, which were readily apparent due to the condition of the road.

Based upon these facts, the analysis is quite simple. A vehicle with its engine running and its lights on is functioning and

gives rise to a reasonable inference that it is being operated by someone at that point in time. *See Cox*, 98 S.W.3d at 550. The lack of any footprints around the vehicle under circumstances where such footprints would have been readily apparent had someone entered or exited the vehicle, gives rise to a reasonable inference that no one had entered or exited the vehicle after it came to a stop at that location. This reasonably inferred fact coupled with the deputy's encounter of the operating vehicle in the middle of a county road with only one person inside, likewise, gives rise to a reasonable inference that the sole occupant of that vehicle, Petitioner in this case, was the person who continued to operate it at that time. Thus, the trial court's determination that Deputy Thompson had probable cause to believe that Petitioner was operating the vehicle at the time the deputy first approached it was supported by substantial, *albeit* circumstantial, evidence.

This obvious analysis of the facts as applied to the law would have been readily apparent had Petitioner complied with Rule 84.04(c) and prepared a fair and concise statement of the facts. His failure to do so misled him into prosecuting this appeal and presenting two meritless points of alleged trial court error. Petitioner's points one and two are denied.

### Decision

The trial court's judgment is affirmed.

BURRELL, P.J., and RAHMEYER, J., concur.